Argued and submitted July 9, affirmed as modified September 26, 1984

In the Matter of the Marriage of

PIERCE,
*Respondent,*
*and*

PIERCE,
*Appellant.*

(D8110-68044; CA A29489)

688 P2d 114

Ira L. Gottlieb, Portland, argued the cause and filed the briefs for appellant.

Jack L. Kennedy, Portland, argued the cause for respondent. With him on the brief were Susan E. Watts, and Kennedy, King, Zimmer & O'Malley, Portland.

Before Gillette, Presiding Judge, Joseph, Chief Judge, and Young, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Wife appeals from a decree of dissolution ending the parties' 38-year marriage. She argues that the trial court divided the marital estate inequitably and provided inadequate spousal support. We agree with two of her contentions, and so we modify the decree.

Husband is a graduate of Harvard College and Harvard Business School. He has worked as an executive for Longview Fibre Company and Precision Castparts. He has also taught college for a number of years. He is currently president of a firm that designs and manufactures technical devices used in cardiovascular medicine. While husband was employed by Precision Castparts, he acquired 24 percent of the company's stock. He presently nets approximately $6,000 per month from all sources. Wife is not engaged in any income producing work, nor does she have prospects to do so.

The trial court awarded husband these assets:

| | |
|---|---|
| Condominium | $ 20,015.00 |
| 55% of Shuman Account (stocks and bonds) | 449,776.25 |
| Precision Castparts stock | 272,259.00 |
| Netarts Bond | 23,750.00 |
| KDS—Oriential Artifacts | 25,000.00 |
| Oriental chests | 12,000.00 |
| The Last Straw - retail gift store | -0- |
| Artwork | 25,000.00 |
| Furniture and furnishings | 5,000.00 |
| Jewelry | 2,000.00 |
| Automobile | 15,000.00 |
| Instromedix retirement account | 3,900.00 |
| CREF Annuity | 12,500.00 |
| TOTAL | $866,200.25 |

Wife was awarded:

| | |
|---|---|
| Residence | $170,000.00 |
| 45% of Shuman account | 367,998.75 |
| Precision Castparts stock | 305,604.00 |
| Magnolia Investment | 5,000.00 |
| Flight Dynamics stock | 712.00 |
| Furniture and furnishings | 10,000.00 |
| Jewelry | 20,000.00 |

| | |
|---|---|
| Automobiles | 6,500.00 |
| Columbia Daily Income Co. account | 4,164.00 |
| TOTAL | $889,978.75 |

Permanent spousal support was set at $400 per month, and husband was ordered to pay $10,000 for wife's attorney fees.

The "Shuman Account" was established in 1977 or 1978. It is a balanced investment account of stocks and bonds and was valued at $817,775.32 in June, 1983. The account is in husband's name. When the parties separated in June, 1980, husband had sole control of the account; however, wife received monthly statements from the manager. Wife asserts that husband squandered or wasted much of the $148,000 that he withdrew from the account during the approximately three years that the parties were separated. With respect to that allegation, the trial court specifically found that

> "there's no reason to believe that there has been an inappropriate secretion of funds on either party's part or that the investments that were good or bad in this case were made out of desire to thwart the distribution of assets or that there's any reason to believe that the investments in either the Last Straw or in KDS were inappropriate, except to the extent that they were dumb."

We have reviewed the record, and we agree with the trial court's assessment of husband's expenditures from the Shuman Account during the parties' separation.

Wife contends that the trial court made a number of errors in the valuation of the marital assets that resulted in her getting less than her fair share. We conclude, however, that, except for the $15,000 1982 bonus owed to husband by his present employer, the trial court's valuation of the assets and its treatment of the parties was "just and proper" as required by ORS 107.105(1)(f). Wife was awarded assets valued at $899,978.75, as well as $10,000 from husband for her attorney fees. Husband was awarded assets valued at $866,200.25. A complex property division poses difficult valuation and distribution problems. The trial court has to develop a distribution that balances various elements, and we will not disturb the trial court's arrangement unless that scheme is demonstrably inequitable. *See Halvorson and Halvorson,* 48 Or App 887, 618 P2d 20 (1980). The trial court's property

division in this case was equitable in all respects except that it failed to include a $15,000 bonus owed to husband in its disposition schedule or to explain why that receivable was not included in its calculations. Accordingly, we modify the property settlement to award wife an additional $7,500 in cash.

Wife also contends that the parties do not leave their 38-year marriage in an approximately equal position because, although the marital assets are divided roughly equally, husband, unlike wife, possesses substantial earning power and has currently a net monthly income of $6,000. Her corollary argument is that the trial court's award of permanent spousal support does not compensate for that inequity, because she will be forced to liquidate her assets and suffer the tax consequences, while husband will not.

The trial court found wife's financial need to be between $3,500 and $4,000 a month. The court also found on the basis of expert testimony, that wife could turn approximately $700,000 of the property division award into about $575,000 of liquid assets after taxes, fees and commissions, which, if invested, would return between $3,900 and $4,300 gross income per month.[1] The trial court awarded $400 per month permanent spousal support to supplement that estimated income figure. In the light of those findings husband argues that the trial court's distribution of assets and award of spousal support is equitable.

ORS 107.105(1)(d) enumerates a number of factors relevant to the determination of a "just and equitable" spousal support award. ORS 107.105(1)(d)(H) directs the court to consider the tax liabilities and benefits to each party. *See also* ORS 107.105(1)(f). ORS 107.105(1)(d)(A) and (D) require the court to consider the length of the marriage and the earning capacity of each party. This was a 38-year marriage. Husband is a Harvard MBA with substantial earning capacity. Wife, who does not have a degree or training, has minimal earning capacity. Parties to a long term marriage should leave the marriage in approximately equal positions. *Glatt and Glatt,* 41 Or App 615, 598 P2d 1237 (1979); *Lake and Lake,* 22 Or App 195, 538 P2d 97 (1975). The $400 spousal support award in

---

[1] The experts based their figures on an assumption that the investments would be in nontaxable securities.

this case does not put wife in an approximately equal position with husband, because she *must* liquidate and thereby reduce her share of the divided capital through payment of taxes and commissions. We look for a figure that approximates equality of capital *and* income. We increase wife's spousal support award to $1,400 per month.[2]

Decree modified by awarding wife an additional $7,500 in cash and increasing her permanent spousal support to $1,400 a month; affirmed as modified. Costs to wife, excluding attorney fees.

---

[2] Husband also argues that the trial court's property division and spousal support award follows from our decision in *Kathrens and Kathrens,* 47 Or App 823, 615 P2d 1079 (1980). In *Kathrens,* the trial court divided the marital estate of approximately $5 million equally and awarded wife $5,000 a month permanent spousal support. We modified the spousal support award to $5,000 per month until the first installment of the judgment was paid and reduced it to $2,000 per month thereafter until the entire judgment was paid, when it will terminate. In so doing we noted that "one of the paramount aims of the law in dissolution proceedings is to disentangle the parties' affairs, insofar as possible, and to reduce or eliminate the dependence of one upon the other." 47 Or App at 832. In the present case, the bulk of the parties' productive assets are the Precision Castparts stock and the Shuman Account. In order to generate monthly income to live on, wife will have to liquidate at least some of her share of those assets and suffer substantial tax liability. Because husband nets approximately $6,000 per month, he will not be forced to liquidate any of his holdings. *Kathrens* is distinguishable from the present case, because there the wife received over $2 million in cash.