Argued and submitted October 7, 1996, remanded in part; otherwise affirmed on appeal and cross-appeal March 12, both petitions for review denied October 7, 1997

(326 Or 62)

In the Matter of the Marriage of

Barbara M. POWELL,
*Appellant - Cross-Respondent,*

*and*

Karl C. POWELL,
*Respondent - Cross-Appellant.*

(9403-62070; CA A88256)

934 P2d 612

Michael A. Yates argued the cause for appellant - cross-respondent. With him on the briefs were Albert A. Menashe, Sarah Geary Ottem and Gevurtz, Menashe, Larson & Yates, P.C.

Gary J. Zimmer argued the cause for respondent - cross-appellant. On the briefs were Peter Bunch and Kennedy, King & Zimmer.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

## RIGGS, P. J.

The issues in this marital dissolution case are whether the trial court erred in its division of certain unvested stock options and whether its spousal support award to wife was just and equitable. On appeal, wife challenges the spousal support and property awards as inadequate. On cross-appeal, husband challenges the spousal support award as excessive. We remand for modification of the spousal support award and otherwise affirm.

The parties were married for 23 years and have three children. At the time of trial, husband was 51 and wife was 46 years old. For the past 20 years, wife has not worked outside the home. Husband is a cofounder as well as the President, CEO and Chairman of the Board of Sequent Computer Systems (Sequent), a publicly-traded corporation. During the parties' marriage, Sequent grew from a company with 18 employees to one with approximately 1800 employees and 50 offices worldwide. In 1993, its gross revenues were $353.8 million.

Husband's annual salary at the time of trial was $455,000, and his bonus for that year was $230,000. Including unearned income that flowed primarily from the exercise of Sequent stock options, his adjusted annual gross income was $1,178,136. The parties have enjoyed a lifestyle that was extremely "comfortable" during the last decade of their marriage. Upon dissolution, they reached agreement on how to divide their real and personal property and most of the assets that produced their unearned income. Under that agreement, wife leaves the marriage with approximately $2.5 million in net assets.

The primary issues at trial were spousal support and the division of certain unvested stock options.[1] Based on an analysis of wife's average monthly expenses over a three-year

---

[1] An expert in executive compensation testified that the stock options are grants, given by the corporation to an employee, that permit the employee to purchase shares of the corporation's stock at a future date, if certain conditions are met. Such options are generally awarded with an exercise price that is equal to the fair market value of the stock at the time of the grant. Thus, a profit is realized only if the stock price increases beyond the exercise price.

period, the trial court found that wife's reasonable monthly expenses are $20,000. Then, adopting the opinion of husband's expert, the court found that wife could procure a monthly income of $15,000 ($180,000 annually) if she liquidates $1.8 million of her assets and invests that money in income-producing assets such as a mutual fund. Based on those findings, wife was awarded spousal support in the amount of $15,000/month for three months, $10,000/month for the next three months and $5,000/month indefinitely thereafter.

The parties' dispute over the distribution of husband's stock options is centered on nine unvested options to purchase a total of 457,500 shares at various times over the next seven years. Over half of those share grants are in performance options, which require the achievement of certain goals in order for the options to vest before May 2002. However, even those options will eventually vest after May 2002, regardless of whether the performance objectives are attained. The remainder of the options will vest if husband continues his employment with Sequent. The options will vest earlier if, for example, Sequent is acquired by or merged with another company.

The parties agree that the nine stock options that were granted to husband during the marriage but had not vested by the time of trial have an estimated worth of approximately $1,410,000 net after taxes and commissions, based on the market price ($17.375 per share) at which Sequent stock was selling on the date of trial. The trial court accepted husband's position that wife should not receive half of those stock options, but rather should receive a portion calculated on the basis of the following fraction:

$$\frac{\text{Number of months from date of option grant to date of dissolution}}{\text{Number of months from date of option grant to date of vesting}}$$

Multiplying the number of shares in each stock option by that fraction produced a figure of just over 82,000 (*i.e.*, 18 percent) of the 457,500 shares at issue. The trial court awarded wife the opportunity to exercise purchase options, as the options vest, on those 82,000 shares.

■ We begin with wife's contention that the trial court erred in unequally distributing the unvested stock options. She seeks a 50 percent distribution, arguing that such an award is required under Oregon case law. She relies on *Becknal and Becknal*, 75 Or App 576, 577, 706 P2d 209 (1985), a one-sentence per curiam opinion that reads:

> "On *de novo* review, we modify the judgment to award wife a one-half interest in the unexercised stock options earned during the marriage, subject to her payment of one-half of the purchase price if and when exercised and her assumption of one-half of any tax liability arising out of the exercise."

Wife contends that *Becknal* established a "rule" that unvested stock options granted during marriage "should be divided equally." Wife is incorrect.

In *Becknal*, the husband had purchased stock options through payroll deductions during the marriage. The trial court accepted the husband's argument that the options were not marital property or any other species of property, but rather were a contract that was "personal to husband" and not transferable or assignable to the wife. It awarded the options to the husband, but gave the wife "the right to come and get an increase" in her spousal support if and when the husband exercised those options. Because there was no basis in the law for that novel approach to spousal support modification, and the court had further erred in not viewing the options as property, on *de novo* review the trial court's error was correctable by simply dividing the stock options down the middle. No "rule" was established thereby.

Next, wife argues that the unvested stock options are marital property to which husband has not rebutted the presumption of wife's equal contribution and that the options represent a reward for husband's past performance, *i.e.*, his work performance while married. Husband agrees that the options granted to him during the marriage are marital property, but contends that he has rebutted the presumption of equal contribution both by showing that he alone will have to expend considerable effort, post-dissolution, for those options to vest and have value, and by showing that the stock options

were granted not to reward him for past service, but to provide incentive for him to stay with Sequent in the years ahead and to work hard to increase the value of Sequent stock.

The trial court found, as do we, on *de novo* review, that the evidence established that at Sequent, outstanding *past* performance is *rewarded* with increases in salary and bonuses, whereas *future* incentive is *created* by granting its finest employees stock options.[2] As Sequent's President, CEO and Chairman of the Board, husband plays a central role in the company. He was described by witnesses as the driving force or "guiding light" for the company, and a person whose efforts directly influence the value of its stock. Testimony and documentary evidence established that the stock grants to husband recognized his potential mobility and were intended to retain him, to ensure the company's future success and to align husband's interests with those of the shareholders. On this record, we agree with the trial court that husband has rebutted the presumption of wife's equal contribution to the acquisition of the value that is represented by husband's unvested stock options.

We next consider the trial court's distribution of those stock options. The calculation that it employed essentially prorates wife's share of the options to reflect the amount of time that each option was held during the marriage. It gives her credit for the months that passed between receiving the options and the date of marital dissolution, and it gives husband credit for the months that must elapse between the marital dissolution and the vesting dates.[3] The

---

[2] The trial court found that the unvested stock options in this case were "not compensation for past services, and the efforts to show otherwise are completely unsuccessful." Although some documents relating to Sequent's option grants do make reference to husband's outstanding past performance, the unchallenged testimony on that point established that although such performance is a *prerequisite* to receiving a stock option grant, the *purpose* for such grants is to retain an employee and to encourage outstanding performance in the future.

[3] Thus, wife receives close to 50 percent of options that vest a few months after the dissolution, and receives a progressively smaller percentage of options that vest further in the future. For example, for one stock option grant representing 75,000 shares with a vesting date in May 2002, wife was awarded 9,844 of the shares and husband was awarded the remaining 65,156.

court found that formula to be "absolutely compelling, absolutely fair, absolutely equitable and just a real[ly] good principle." At least on a record such as this one, we agree, and note that in *Richardson and Richardson*, 307 Or 370, 378-79, 769 P2d 179 (1989), a similar calculation, known as the "time rule," was employed to determine the portion of an unvested pension that had been acquired before the parties' separation and the portion that was acquired thereafter. Careful attention to the documents and other evidence surrounding a particular option award will be needed on a case-by-case basis.

■        Finally, wife argues that if she is not awarded 50 percent of the stock options, we should at the very least adopt the following valuation rule:

$$\frac{\text{Number of months from date of employment to date of option grant}}{\text{Number of months from date of option grant to date of vesting}} \ \mathbf{X} \ \text{\# of shares}$$

There may be circumstances in which that is the better rule, such as when stock options are granted to induce an individual to leave his or her present employer. *See, e.g., In re Marriage of Hug*, 154 Cal App 3d 780, 789-90, 201 Cal Rptr 676 (1984). However, those circumstances are not present in this case, and therein lies the reason why we decline to adopt, wholesale, *any* of the "rules" that the parties proposed.

Decisions relating to property division must be "just and proper" in the light of the unique circumstances of each case. ORS 107.105(1)(f). Having reviewed the various rules employed by courts in other jurisdictions, we conclude that no one rule will produce a just and proper result in all cases and that no one rule will be responsive to the many different reasons why stock options are granted. *Accord In re Marriage of Short*, 125 Wash 2d 865, 873, 890 P2d 12 (1995). Stock options may be granted to obtain an employee or reward past performance, in which case the presumption of the nonemployee spouse's equal contribution may be harder to rebut. Or, as in the present case, they may be granted to retain an employee and ensure that the employee will work hard for the company in future years that may extend well beyond the marital dissolution, and it is therefore more appropriate to emphasize the length of time that must pass before the options vest. *See, e.g., In re Marriage of Nelson*, 177 Cal App

3d 150, 222 Cal Rptr 790 (1986). Or, options may be granted for a combination of reasons, or based on mixed motivations of an employer. Again, each case must be decided on the basis of its unique facts.

■ We turn to the issue of spousal support. Wife contends that a $5,000 per month indefinite-duration award "is grossly inadequate in light of husband's phenomenal earning capacity, and in light of the extraordinary standard of living the parties enjoyed during the marriage." She seeks an indefinite award of $15,000 per month, noting that she deferred her personal aspirations, career and education in order to care for the family, advance husband's career and assist him in the start-up and promotion of Sequent. Wife also argues that husband's income is "more than ample to provide wife with monthly support to meet her needs without liquidation of her assets" and that it is unfair to require her to rely on assets to pay the bills while not requiring the same of husband.

The trial court described the issue of spousal support as "very complex in this case," given that wife is 46 years old and has received over $2 million in assets but is currently unemployable and is accustomed to an extremely high standard of living, and given that husband "leaves this marriage with assets of equal value to [those of] Wife and the lion's share of the unvested stock options," *plus* his substantial salary and the earning potential of his assets. Having weighed the relevant statutory factors, we conclude that an award of indefinite spousal support is warranted in this case, based on the following facts: This has been a long marriage, ORS 107.105(1)(d)(A), wife has contributed to husband's earning power, ORS 107.105(1)(d)(C), wife is—from a potential employer's standpoint—totally unskilled and uneducated, ORS 107.105(1)(d)(D), and she has a future earning capacity that is uncertain, at best, due to her 22-year absence from the job market to perform the role of homemaker, ORS 107.105(1)(d)(F). *See Pokorny and Pokorny,* 109 Or App 503, 506, 820 P2d 827 (1991) (award of indefinite spousal support based on the wife's extended absence from the workforce to raise parties' children and the small likelihood that she would be able to obtain work that would provide her with a

standard of living remotely commensurate with that which she enjoyed during the marriage).

On cross-appeal, husband argues that, because wife received assets worth over $2 million in the property division, she should not receive spousal support. However, we have recently reiterated that spousal support is not precluded by a wife having received substantial assets in the property division, where the husband "has the earning capacity to pay a level of support that will allow wife to maintain a standard of living not overly disproportionate to that *available* to the parties during the marriage." *Mask and Mask*, 143 Or App 377, 382, 923 P2d 1304 (1996) (emphasis in original); *see also Pierce and Pierce*, 70 Or App 24, 29, 688 P2d 114 (1984) ("We look for a figure that approximates equality of capital *and* income.") (emphasis in original).

As for determining the amount of support, the trial court found that wife's assets could be invested in a manner that would produce enough income to cover a substantial portion of her monthly expenses without invading principle. The parties vigorously dispute which assets could or should be liquidated and invested for that purpose. On the record before us, it is not clear what amount would be left after liquidation and reinvestment, given the disputed tax consequences thereof. However, on balance, and with appropriate deference to the trial court's careful analysis, we believe that wife will be able to maintain a "standard of living not overly disproportionate to that enjoyed during the marriage," ORS 107.105(1)(d)(M), with indefinite spousal support of $6,500 per month.

Remanded for modification of spousal support award to provide $15,000 per month for three months, $10,000 per month for the next three months, and $6,500 per month indefinitely thereafter; otherwise affirmed on appeal and cross-appeal. No costs to either party.