Argued and submitted November 7, 1996, award of attorney fees reversed, otherwise affirmed on appeal; remanded with instructions on cross-appeal September 10, petition for review denied December 16, 1997 (326 Or 233)

In the Matter of the Marriage of

Anita Marie BATT,
*Respondent - Cross-Appellant,*

*and*

Stuart Alan BATT,
*Appellant - Cross-Respondent.*

(94-10-26807-E; CA A90627)

945 P2d 517

Robert T. Mautz argued the cause for appellant - cross-respondent. With him on the briefs was Mautz Baum Hostetter & O'Hanlon.

Mark A. Johnson argued the cause for respondent - cross-appellant. With him on the brief was Findling & Johnson LLP.

Before Deits, Chief Judge, and De Muniz and Haselton, Judges.

DEITS, C. J.

**DEITS, C. J.**

Husband appeals from a dissolution judgment, challenging the trial court's award of spousal support and its award of attorney fees to wife. Wife cross-appeals, assigning error to the provision in the dissolution judgment requiring that spousal support automatically terminate upon her remarriage. Wife also assigns error to the trial court's use of a marketability discount in determining the value of certain real property awarded to husband. We review *de novo*, ORS 107.405; ORS 19.125(3), and remand for modification of the judgment.

The parties were married in 1971. At the time of trial, wife was 50 years old and husband was 52. They have two children, an adult son who no longer lives with them and a daughter who was 14 at the time of trial. The parties' daughter is autistic. She does well academically but has some social difficulties. She has to be taken to school and picked up each day and must be under adult supervision most of the time.

Husband attended law school when the parties first married, but since that time he has worked on his family's farms, first as a laborer and later as a manager. His job managing one of the farming operations, Hyline Farms, ended when that farm was sold in September 1995. After the completion of the sale, husband anticipates either starting a new farming operation or working for his brother as a laborer.

Wife has a high school diploma and 40 hours of college credits. During the early part of the marriage, she worked in various secretarial and bookkeeping positions. For the last 22 years of the marriage, she worked full time out of the family home as a bookkeeper for Hyline Farms. Her job there also ended when the farm was sold.

The marital property, valued at about $2.4 million, includes interests in farms that are incorporated, real property, insurance policies, annuities, and certificates of deposit. The trial court gave husband all of the parties' interests in the family farms and awarded wife other property of equivalent value. However, the court then went on to award husband a West One certificate of deposit held by the parties that

was worth about $168,750. That resulted in a division of marital property in which husband received assets valued at $1,368,304 and wife received assets of about $1,048,745. The trial court explained that it had awarded the certificate of deposit to husband to give him the liquidity that he said that he needed in order to start a new farming operation.

The trial court also awarded wife spousal support of $2,000 per month from July 15, 1995 through June 2000 and $1,750 per month thereafter "indefinitely on the same day of the month until [wife] dies or remarries, whichever event occurs first, or until further order of a court of competent jurisdiction." Wife was given custody of the parties' daughter and the parties stipulated that husband would pay child support of $1,000 per month.[1]

■ Husband argues that spousal support is not justified here because wife was given sufficient income-producing assets to support her in a manner not overly disproportionate to the standard of living that she enjoyed during the marriage. Wife contends that spousal support is appropriate for three reasons: (1) the trial court awarded husband the "long half" of the marital property; (2) wife will have an ongoing obligation to care for their daughter, and; (3) there will remain a substantial disparity in the earning capacities of the parties following dissolution.

In determining the proper level of spousal support, our goal is to award "such amount of money for such period of time as it may be just and equitable" under the particular circumstances. ORS 107.105(1)(d). As we explained in *Krutsinger and Krutsinger*, 140 Or App 215, 218, 914 P2d 1096 (1996):

> "The amount and duration of spousal support should be set 'on terms that are equitable between the parties,' taking into account both need and ability to pay, while furthering 'the goal of ending the support-dependency relationship within a reasonable time if that can be accomplished without injustice or undue hardship.' " (Citations omitted.)

We determine the amount and duration of spousal support using the factors identified in ORS 107.105(1)(d).

---

[1] The parties do not dispute the custody or child support award.

Those statutory factors include, among others, the length of the marriage, the age and health of the parties, the earning capacity of both parties, the number and needs of dependents and the standard of living established during the marriage. ORS 107.105(1)(d). We also consider whether the earning capacity of a party is impaired due to an absence from the job market to attend to the needs of the family. ORS 107.105(1)(d)(F); *Benson and Benson*, 146 Or App 364, 932 P2d 104 (1997). Our objective is to enable each party "to achieve an economic standard of living not overly disproportionate to that enjoyed during the marriage, to the extent that is possible." ORS 107.105(1)(d)(M).

As noted above, husband's argument that the amount and duration of support is excessive is based essentially on the view that, under the circumstances of this case, especially considering the assets that wife received in the property division, she does not *need* the support. Husband is correct that both he and wife will receive income from the assets that they were awarded in the property division. The evidence is that wife will receive about $30,000 per year and husband will receive approximately $65,000 per year in investment income.[2]

Both parties also have the ability to earn some additional income. Although wife's earning capacity is limited somewhat by her obligation to provide care for the parties' daughter, the evidence shows that she has an earning capacity of about $9,000 per year if she works part time to about $14,000 per year if she works full time. At the time of trial,

---

[2] Husband contends that wife's income from investment property that she was awarded is about $36,000 per year, basing that assertion on his understanding of both parties' expert testimony. Wife's expert testified that wife would receive about $47,000 per year, including child support of $1,000 per month, which would amount to $35,000 per year in investment income. The expert based that calculation on the assumption that wife would receive certain properties that she had requested in the property division, including the West One certificate of deposit that was valued by the parties at $168,750 with a yearly income of $9,281. Husband's expert testified that, using wife's suggested distribution of assets, husband would receive about $55,512 per year in investment income and wife would receive about $38,435 per year in investment income. The court divided the parties' assets as suggested by wife with the exception of the West One certificate of deposit, which it awarded to husband. Accordingly, it is appropriate to reduce the estimated investment income wife would receive and increase the amount husband would receive to account for the actual distribution of property.

husband's employment situation was in transition. Accordingly, the determination of his earning capacity necessarily is somewhat speculative. He testified that he hoped to start a new farming operation if he was awarded sufficient liquid assets in the property division. As the manager of one of the family farms, husband earned $75,500 in 1989 and 1990; $61,500 in 1991; $70,500 in 1992; $75,500 in 1993 and 1994 and about $108,000 in salary, monthly pay and bonuses in 1995. The 1995 amount is skewed somewhat, however, by the bonus of $40,000 that he received that year and will receive through 1999. Husband also received, as a benefit of working on the family farms, the use of a pickup truck as well as gas, oil and all maintenance for the truck, paid health insurance and occasional meals.[3] In addition, as an officer in various capacities of the family corporations, he earned in excess of $5,000 per year for his services.[4] Husband testified that if a new farming operation did not work out, he could earn about $24,000 per year working for his brother on another family farm. Although it is difficult to precisely determine husband's potential income, it is clear that his earning capacity far exceeds that of wife.

We conclude, as did the trial court, that, under the circumstances here, it is just and equitable that wife be awarded indefinite spousal support. Contrary to husband's contention, an award of spousal support is not precluded by the fact that wife received substantial assets in the property division. We have held that such an award may be appropriate even if the party has received substantial assets where the supporting spouse has the earning capacity to pay a level of support that will allow the other spouse to maintain a standard of living not overly disproportionate to that available to the parties during the marriage. *Powell and Powell*, 147 Or App 17, 25, 934 P2d 612 (1997); *Mask and Mask*, 143 Or App 377, 382, 923 P2d 1304 (1996).

We conclude that under these circumstances, despite the fact that wife did receive substantial assets, the award of spousal support is appropriate. As discussed above,

---

[3] Husband testified that he would continue to receive these benefits.

[4] It is not clear from the record whether husband will continue to receive this income beyond 1995.

husband has substantial earning capacity, clearly in excess of wife's. Wife's skills and training limit her earning capacity. In addition, responsibilities to the parties' dependent child have limited wife's development of her earning capacity and may continue to do so in the future. That is an appropriate consideration in determining spousal support. ORS 107.105-(1)(d)(A) and (G); *Smith and Koors*, 149 Or App 198, 206, 942 P2d 807 (1997).

■     Finally, husband was awarded the long half of the marital property when the trial court gave him the West One certificate of deposit. That resulted in husband receiving $320,000 more than wife in marital assets. The division of property is a proper consideration in determining the appropriate spousal support award. ORS 107.105; *see Powell*, 147 Or App at 25 (considering effects of property division on spousal support); *see also Mask*, 143 Or App at 381 (same); *see also Simpson and Simpson*, 35 Or App 333, 336, 581 P2d 129 (1978) ("property division, spousal support and child support are interrelated considerations"). We conclude that, under the circumstances here, the amount of spousal support awarded by the trial court is just and equitable.

■     Husband next argues that the trial court erred in awarding attorney fees to wife. He contends that wife's attorney withdrew the request for attorney fees at the close of trial and that there is no evidence in the record to support an award of attorney fees.

Husband is correct that wife's counsel did indicate during closing argument that she was withdrawing her request for attorney fees. However, that comment appears to have been based on the assumption that the parties' property was to be divided equally which, of course, did not happen. Accordingly, the status of the request for attorney fees is not entirely clear. Regardless, however, as husband contends, there is no evidence in the record regarding the amount of fees incurred or whether the fees were reasonably or necessarily incurred. Because there is no evidence to support the award of fees, the trial court erred in making the award. *Schreiber and Schreiber*, 93 Or App 513, 762 P2d 1065 (1988); *Trudel and Trudel*, 45 Or App 663, 669, 608 P2d 1230, *rev den* 289 Or 209 (1980).

■ On cross-appeal, wife argues that the trial court erred when it discounted by 25 percent the value of certain real property awarded to husband. Wife contends that the facts here do not demonstrate that a marketability discount is appropriate. She points out that the assets at issue are all real property owned by husband's family farming operation, that there is no evidence that husband intends to sell his interests in these properties and, further, that the evidence shows that if these interests were sold, they would be sold to family members or there would be a sale of the whole property in cooperation with the co-owner family members.

Husband asserts that a marketability discount is justified here, because the evidence shows that there is a limited market for husband's interest in this property. He argues that, under our decision in *Tofte and Tofte*, 134 Or App 449, 457 n 5, 895 P2d 1387 (1995), it does not matter that husband did not contemplate a sale of only his interest in the property.

We have held that a marketability discount is an appropriate device to use in valuing a party's interest in an asset under some circumstances. In our decision in *Tofte*, we explained the reason for such a reduction:

> "[A] marketability discount addresses the degree of liquidity of the interest. Such discounts compensate for the lack of a recognized market for a particular stock, lack of ready marketability, or restrictive provisions affecting ownership rights or limiting sale." 134 Or App at 456 n 3. (Emphasis omitted.)

As we further explained in *Tofte*, "valuation is a fact-based analysis necessarily taken on a case-by-case basis."

■ We note at the outset that husband is correct that the fact that a sale is not contemplated does not necessarily mean that a marketability discount is not appropriate. As we said in *Tofte*:

> "We are mindful of the fact that both *Barlow* [*and Barlow*, 111 Or App 179, 826 P2d 18, *rev den* 313 Or 299 (1992)] and *Webber and Webber*, [99 Or App 703, 784 P2d 111 (1989), *on recons*] 102 Or App 93, 792 P2d 484, *rev den* 310 Or 282 (1990), have been construed by practitioners as establishing a requirement that there be evidence of a prospective

sale to justify application of a marketability and/or minority discount to the value of a closely held corporation's shares. We do not agree with that broad interpretation and emphasize that valuation is a fact-based analysis necessarily taken on a case-by-case basis." 134 Or App at 457 n 5.

Accordingly, the likelihood of a future sale is just one factor that we consider in deciding if the discount should be used.

A number of previous decisions by this court involved circumstances quite similar to those presented here. Our decision in *Barlow* involved an appeal of a dissolution judgment in which the trial court refused to apply a marketability discount to the husband's interest in a family farm that had been incorporated. 111 Or App at 181. In that decision, we identified the underlying assumption that justifies a discount in valuation of certain co-owned properties:

> "[U]nder the asset value method, the value of stock in a closely held corporation may be discounted if it represents a minority interest * * *. A discount is an attempt to take into account the difficulty of actually turning an asset into money. The underlying assumption for discounting is that, in a hypothetical sale, only part of the corporate stock will be sold, with the remainder still being held by the other shareholders. When that assumption is not supported by the evidence, a discount may not be proper." *Barlow*, 111 Or App at 182. (Citations omitted.)

In *Barlow*, we concluded that the assumption was not supported by the evidence because husband was not contemplating a sale *and* because the expert testimony indicated that small farm corporations are usually sold as a complete unit, not as individual stocks. *Id*. Because we found that the assumption underlying the discount was absent in that case, we concluded that the discount should not have been applied. *Id*.

In *Webber*, husband was awarded the parties' minority interest in a family farming corporation. 99 Or App at 705. We found that the husband, if he were to sell his shares, would probably sell them to his parents and, therefore, he likely would not incur a loss due to costs of sale nor losses due to minority ownership or diminished marketability. *Id*. at 706. On reconsideration, we noted:

"This is a family operation. If a sale should occur, and there is no evidence of any prospective sale, it could as well be by a sale of the corporate assets at their fair market value as by a transfer of the stock. We decline to apply either a minority or a marketability discount." *Webber*, 102 Or App at 95.

Our decision in *Tofte* provides an example of circumstances that we found justified a marketability discount. In *Tofte*, we applied a marketability discount to husband's shares in a closely held, family-owned amusement park. 134 Or App at 458. We concluded that a discount was appropriate there because, although the shares could be sold separately from the other owners' shares, there was less of a market for shares in a closely held corporation than in a publicly traded corporation. *Id.* at 457-58.

In reaching our decision in *Tofte*, we specifically explained how the facts there were distinguishable from those in *Barlow*. We stated:

"The rationale for applying a discount was not present in *Barlow*, because the farm's value was derived from its underlying assets, and there was expert testimony to the effect that 'small family farm corporations are normally sold as a whole, usually by a sale of all the assets.' * * * In other words, the expert testimony indicated that that type of corporation was not ordinarily sold in shares and, in fact, the shareholder testified that no minority sale was planned. That situation does not exist here; therefore, husband's intent to sell or retain his shares in Enchanted Forest, Inc., on these facts is irrelevant in determining the propriety of applying a discount to the value of his interest in the corporation." *Tofte*, 134 Or App at 457. (Citation omitted.)

We conclude that a marketability discount is not appropriate here for reasons similar to those supporting our holdings in *Barlow* and *Webber*. Here, husband's expert testified that it would be difficult for husband to sell his interest in the family farms independently. However, he also testified that, in his experience, most family-owned farming operations are sold as a complete operation. Additionally, husband testified that he did not contemplate a sale and that, although he did not know whether he was restricted from

selling to outside parties, if he sold his interest in the family farms, he would likely sell it only to other family members. There was no evidence that husband would be forced to sell his interest to his family at a discount rate or that if the family sold an entire farm that it would have to sell at a discount rate.

We hold that the trial court erred in applying a discount to the value of the farm interests. The interests should have been valued at $566,914 rather than the amount used by the trial court, $425,186. Consequently, the property award is modified to award wife an equalizing judgment of $70,864. Husband shall pay one-half of that amount plus interest by January 1, 1998, and one-half plus interest by January 1, 1999. Interest on the judgment shall accrue at nine percent per annum from the date of the trial court judgment.[5] ORS 82.010; *Edwards and Edwards*, 141 Or App 11, 19, 917 P2d 504, *rev den* 324 Or 305 (1996).

Wife also argues that the trial court erred in including a provision in the dissolution judgment that wife's spousal support automatically terminates if she remarries. Husband concedes that inclusion of that provision was error. We agree, *Grove and Grove*, 280 Or 341, 355, 571 P2d 477, *mod* 280 Or 769, 572 P2d 1320 (1977), and remand to the trial court with instructions to delete that provision from the judgment.

On appeal, award of attorney fees reversed; otherwise affirmed. On cross-appeal, remanded for entry of amended judgment awarding wife an equalizing judgment of $70,864, $35,000 payable, with interest accruing at nine percent per annum from the date of the trial court judgment, on January 1, 1998, and the remaining amount, with interest accruing at nine percent per annum from the date of the trial court judgment, payable on January 1, 1999; and modifying the judgment to eliminate the provision that spousal support shall terminate upon remarriage. No costs to either party.

---

[5] Wife also argued in her cross-appeal that, if we reduce or eliminate the spousal support award, we should award her the West One certificate of deposit to equalize the property division. Because of our disposition of the spousal support issue, we need not address that argument.