Argued and submitted February 7, affirmed June 7, 2000

In the Matter of the Marriage of

Yvonne A. SMITH,
nka Yvonne Annette Schwartz,
*Appellant,*

*and*

James H. SMITH,
*Respondent,*

*and*

J.S.E., INC.,
an Oregon corporation,
dba Jim Smith Excavating,
*Respondent below.*

(DR97-05-240; CA A102376)

7 P3d 559

Mark A. Johnson argued the cause for appellant. With him on the opening brief was Findling & Johnson; with him on the reply brief was Bennett, Hartman & Reynolds.

Kimberly A. Quach argued the cause for respondent. With her on the brief were Ronald I. Gevurtz and Gevurtz, Menashe, Larson & Howe, P.C.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

BREWER, J.

## BREWER, J.

The issue in wife's appeal from a judgment of dissolution is whether the trial court erred in declining to award spousal support. We review *de novo*, ORS 19.415(3), and affirm.

Husband, age 42, and wife, age 38, were married for 13 years. Before their marriage, they cohabited for two years. Both parties enjoy good health. Wife has custody of their children, ages 12 and 10. Husband has a ninth-grade education. He worked as a laborer in the construction industry for nine years before starting his own contracting business, J.S.E., Inc. (JSE), three-and-one-half years before he and wife began living together. Wife has attended two years of college, where she took accounting courses. Before cohabiting with husband, she worked as a bank teller and was eventually promoted to supervisor. She left that job to assist husband at JSE and continued to work there, full time, until she and husband separated. Wife earned $3,250 per month as JSE's accountant and office manager. She expects to maintain that earning capacity with her existing skills, but would prefer to obtain a college degree in accounting in order to enhance her income.

In addition to miscellaneous personal property, the trial court awarded wife the marital residence, valued at $391,082, a second home worth $123,500, a business interest worth $92,925, three vehicles valued at $43,250, bank and investment accounts in the sum of $828,340, retirement accounts worth $57,365, and an equalizing money judgment in the amount of $1,692,417. The money judgment was payable in full upon entry of the judgment of dissolution. Wife received a total property award of $3,232,989. Of that amount, $2,578,122 consisted of cash, investment accounts, and retirement accounts.

Husband received JSE in the property division. JSE is a subchapter S corporation under the Internal Revenue Code; for tax purposes, its income is passed through to husband, who is its sole shareholder. Husband's salary from JSE is $6,917 per month. However, JSE earned $556,000 in gross profits in 1996 and $1 million in 1997; its average gross

annual profit for the four years preceding trial was $800,000 per year. Husband's expert testified that, in the future, JSE's profits would decrease because husband's payment of the equalizing judgment to wife will require him to take out a $2 million loan[1] and because he expected the construction industry to suffer a downturn.

In its oral ruling, the trial court found that the value of JSE was $4,887,864.[2] After the date of its valuation, wife removed $700,000 from JSE. In the property division, she was charged with that sum. The court thus adjusted JSE's value to husband to account for wife's withdrawal, yielding a net value of $4,187,864. The court gave husband no credit for his premarital contribution to the value of JSE and assigned no goodwill value to the business, based on the parties' evidence that no such value existed.

In addition to JSE, husband received another business worth $43,680, two parcels of real property worth $472,000 and $54,203, respectively, two vehicles worth $15,700, an interest in a boat worth $2,500, a bank account worth $3,176, and retirement accounts valued at $66,764. Including other personal property of relatively small value, husband received property worth a total of $4,939,701, which was reduced to $3,247,284 by the equalizing judgment.

With respect to spousal support, the trial court stated that

"The parties, through their equal contributions, have created a business of enviable value. The business has no goodwill. [Wife] worked full-time for the business earning $39,000 a year, and * * * she is 38 years old and capable of full-time employment. [Wife] did not sacrifice employment or educational opportunities during the marriage. She will receive in excess of $2 million in liquid funds, which has a

---

[1] Husband's expert testified that husband would need to borrow $2 million to pay the equalizing judgment and to produce the cash necessary to purchase and maintain equipment and to cover personnel costs.

[2] In the judgment of dissolution, the trial court valued JSE at $4,982,168, including its premarital value of $62,000. For reasons that are not clear, that figure is $94,304 higher than the value the court assigned to JSE in its oral ruling, in which it provided the property values that determined the amount of the equalizing judgment. Because the parties make no issue of the discrepancy, we do not address it further.

substantial investment value and can produce substantial passive income[,] without any depreciating principal[,] that is in excess of her stated needs. This is not an appropriate case for spousal support."

Wife appeals, assigning error to the trial court's failure to award spousal support. She claims that husband can earn $67,000 per month from his share of the assets (primarily from JSE), while she can earn only $18,000 per month from hers. According to wife, the parties' ability to "save and invest" was part of the marital lifestyle. Wife argues that, although the parties amassed a $6.4 million marital estate, the trial court's award allows her only to pay her expenses, whereas husband will have enough income to save, invest, and increase his net worth.

Husband responds that wife does not need spousal support in order to enjoy a "not overly disproportionate" standard of living and that wife has not made a contribution to his earning power that would justify a spousal support award. Husband also contends that wife has overstated the disparity in the parties' expected future incomes. He gives several reasons in support of his argument: First, he asserts that no expert witness, including wife's witnesses, testified that JSE's earnings would remain as high in the future. All of those witnesses acknowledged, for example, that construction was declining in husband's area of work. More significantly, husband argues, his debt service expenses will reduce his income from JSE, at least over the next five years, to no more than $300,000 per year, or $25,000 per month. Assuming the accuracy of wife's conservative estimate of her own income, the disparity between the parties' incomes would thus reduce to no more than $7,000 per month. Third, and most prominently, husband asserts that any true disparity reflects a difference in the parties' tolerance for risk: He can earn more on the "upside," because JSE is a risky investment, while wife insists on conservative investments with a concomitantly lower rate of return.

ORS 107.105(1)(d) (1997)[3] authorized the trial court to award spousal support in an amount and for a duration

---

[3] ORS 107.105 was changed substantially by the 1999 legislature; however, the amendments are not retroactive. Or Laws 1999, ch 587, § 3, *compiled as a note after* ORS 107.105 (1999).

that is "just and equitable." In deciding whether, how much, and for how long spousal support should be ordered, the courts do not attempt merely to eliminate any disparities in the parties' incomes or to enable one spouse to look to the other indefinitely for support. *Wolhaupter-Heinzel and Heinzel*, 108 Or App 514, 521, 816 P2d 672, *rev den* 312 Or 526 (1991). The primary purpose of spousal support is to provide a not-overly disproportionate standard of living to that achieved during the marriage when the supported spouse cannot do so on his or her own. *See Hayner and Hayner*, 58 Or App 324, 328, 648 P2d 379, *rev den* 293 Or 635 (1982). In assessing the need for spousal support, the court must consider the other financial provisions of the judgment, and none can be considered in isolation. *Grove and Grove*, 280 Or 341, 344, 571 P2d 477, *mod on other grounds* 280 Or 769 (1977).

Wife's argument on appeal reduces to two primary points: (1) That, given the income capacity of the marital assets awarded to husband, wife has been left with a disproportionately lower standard of living, and (2) the court did not give sufficient weight to wife's contribution to husband's earning power.

■ For several reasons, we agree with the trial court that wife received sufficient assets to achieve a lifestyle not overly disproportionate to that enjoyed by the parties during the marriage. First, for the reasons noted by husband's expert, the disparity in the parties' income capacities is unlikely to be as large as wife projects. Second, JSE is a *business*. For any number of reasons, including, for example, the ongoing need to recapitalize and to retain earnings to meet unexpected expenses, at least some of its future profits may not be available for distribution to husband. Third, husband correctly notes that any true disparity is, in part, the direct result of differences in the parties' tolerances for economic risk. Wife's assets are liquid, and she plans to invest them conservatively; husband's fortunes rise or fall with JSE, which is guaranteed no particular level of profits and may even suffer losses in the future. Fourth, the Uniform Support Affidavit (USA) that wife submitted to the trial court undercuts her argument. The USA estimated her expenses as $12,686 per month, including a monthly deposit into the children's college funds. Wife received $3.2 million in assets,

including $2.5 million consisting of cash, a money judgment, investment, and retirement accounts, as well as $1,000 per month in child support. Wife's own financial expert testified that an asset division in the amount wife ultimately received would produce income, if invested conservatively, of $18,000 per month. According to wife's evidence, that division would, after expenses and taxes, leave her with $1,048 available for savings each month. If wife elects to return to work, by her own estimate, she would earn $3,250 per month, all of which, after taxes, would also be available for savings. Thus, wife's actual and fairly imputed income provides her with a substantial ability to accumulate wealth.

Wife proposes that, in order to account for the greater risks faced by husband, spousal support should consist of 20 percent of the earnings of JSE. However, wife's proposal does not level the field of risk; she would share in the "upside" of corporate profits without a corresponding commitment to contribute proportionately to any losses that the business may incur in the future. In addition, wife would treat corporate earnings as though they were fully available for distribution to the parties. As noted, that notion is at odds with commercial reality. Further, wife's proposal does not satisfy the goal of disentangling the parties economically. *See Wilson and Wilson*, 155 Or App 512, 518, 964 P2d 1052 (1998) ("When possible, we 'seek to disentangle the parties' financial affairs and make them free from each other's interference' in fashioning a judgment of dissolution.") (quoting *Slauson and Slauson*, 29 Or App 177, 183-84, 562 P2d 604 (1977)). It would invite potential disputes about the calculation of corporate profits and the manner in which husband is managing the business, should wife conclude that earnings are not being maximized. In short, even if spousal support were appropriate in this case, wife's proposal would not constitute a just and equitable solution.

We recognize that the bare fact of a substantial property award does not defeat a spousal support claim. However, previous decisions in which we have approved a support award in addition to such a division involved circumstances not present in this case. Two examples will suffice to illustrate the distinctions. In *Powell and Powell*, 147 Or App 17, 934 P2d 612, *rev den* 326 Or 62 (1997), the wife had limited

education and was unemployable at the end of a 23-year marriage. *Id.* at 19, 24. Although she received $2.5 million in assets, she would have had to liquidate most of those assets in order to produce adequate investment income to meet her needs and would incur a substantial tax liability in the process. Thus, spousal support was awarded, in large measure, as a hedge against the reduction of the wife's share of the marital estate. *Id.* at 19, 25; *see also Pierce and Pierce*, 70 Or App 24, 29, 688 P2d 114 (1984). Wife does not face such a dilemma in this case.

In *Batt and Batt*, 149 Or App 517, 945 P2d 517, *rev den* 326 Or 233 (1997), the wife received assets of $1,048,745. *Id.* at 520. Her total income capacity from employment and investments was less than $45,000 per year. *Id.* at 521. We awarded permanent spousal support because of the wife's inability, given her other resources, to enjoy a lifestyle not overly disproportionate to that enjoyed during the marriage, and also because of her limited employment skills and training and her responsibility for the parties' autistic child. We also noted that the husband received the long half of the parties' assets. *Id.* at 523. Here, in contrast, wife has sufficient passive income capacity to lead her customary lifestyle and is readily employable without restriction.

■ We next address briefly the issue of wife's contribution to husband's earning power, a factor that the court is directed to take into account in considering spousal support. ORS 107.105(1)(d)(C) (1997). Wife emphasizes that the parties jointly acquired JSE, which has furnished by far the greatest portion of the parties' income. According to wife, that factor "reinforces" the justification for a spousal support award, in view of the difference in the parties' earning capacities. However, wife received credit in the property division for her contribution to the value of the business; neither the value of the business nor the extent of wife's contribution to that value is in dispute. Specifically, wife does not contest the court's finding that JSE's value does not include a goodwill component. That finding forecloses a determination that either spouse has succeeded, thus far, in making a lasting contribution to the earning power of the business; the absence of institutional goodwill value means that the ongoing success of the business depends on the personal services

of husband as owner-operator and on his ability to generate new work. *Maxwell and Maxwell,* 128 Or App 565, 567-69, 876 P2d 811 (1994). Because wife relies upon the projected earnings of JSE to support her argument that she has contributed to husband's earning power, the lack of corporate goodwill belies her assertion. Apart from the corporation's earnings, the evidence did not establish that wife contributed to husband's *personal* earning power. Therefore, that statutory consideration did not justify or buttress an award of spousal support.

In this case, wife's passive income capacity—estimated conservatively—exceeds her stated needs, and she could earn additional income to save and invest through employment for which she is presently qualified. The parties' assets, including the undisputed value of JSE, were equally divided. Wife's investment philosophy is reflected in the property division; the assets she received are much more certain to yield a secure and predictable return than is JSE. Ultimately, there is no persuasive evidence that wife could not, in the absence of a spousal support award, be able to achieve a standard of living that compares proportionately with the marital standard. Under the circumstances, the trial court did not err in declining to award spousal support to wife.

Affirmed.