619

Argued and submitted January 9, 2002, affirmed January 8, 2003

In the Matter of the Marriage of

Marilyn Julie BOUNDS,
*Respondent,*

*and*

Ronald Bruce BOUNDS,
*Appellant.*

15-99-08722; A111333

60 P3d 1090

Jeffrey E. Potter argued the cause for appellant. With him on the brief was Gardner, Honsowetz, Potter, Budge & Ford.

George W. Kelly argued the cause and filed the brief for respondent.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

WOLLHEIM, J.

**WOLLHEIM, J.**

Husband appeals from a judgment dissolving his 20-year marriage. He assigns error to, among other things, the trial court's award of spousal support to wife. He argues that the trial court erred by failing to take into account the investment income wife would earn from the property division and by attributing to him an annual income of $50,000. On *de novo* review, ORS 19.415(3) and ORS 107.405, we affirm.

Husband and wife were married in 1978. At the time of trial, husband was 49 years old and wife was 46 years old. The parties had three children, two of whom are still minors. Wife was awarded custody of the children, an award that husband does not contest.

Wife has a high school education and, beginning with the birth of the parties' first child, initially did not work during the marriage. She returned to work in 1985 as an educational assistant and speech and language assistant at a local school district. At the time of trial, she earned $9.60 per hour as an educational assistant and $10.19 per hour as a speech and language assistant. She works nearly full time but does not work during school holidays or during the summer. In 1999, wife earned $9,745.

Husband has a high school education and, for the past 20 years, has worked in construction. In 1989, husband opened his own construction business, performing custom excavation, concrete, building, and underground tank removal. Husband's income has varied. In 1995, he earned $103,542, and his income steadily increased to its highest level of $230,157 in 1998. In the last seven months of 1999, husband earned $69,961.

Husband, however, believed that his income would decrease in coming years for two reasons. First, underground tank removal work, the bulk of husband's business, was decreasing. Second, husband was concerned that his income would decline due to an eye disease that may eventually cause blindness. He did, in fact, lose sight in his left eye in 1986 and, for the past 10 years, he has been receiving weekly

or biweekly treatments in order to maintain the vision in his right eye. Husband's ophthalmologist, while noting that there is a possibility that husband may completely lose his eyesight, also noted that husband's vision has not worsened since 1992.

Husband's ophthalmologist recommended that husband be evaluated for an experimental eye surgery that would, in the best of circumstances, help husband regain some eyesight in his left eye and prevent any loss of sight in his right. Husband was evaluated by Dr. Goldberg at the UCLA School of Medicine, and, at the time of trial, husband was also considering a second evaluation at the University of Utah. Goldberg recommended surgery, beginning with husband's left eye. The procedure would consist of five or six surgeries per eye, with two to three months between surgeries and a total of two years of surgery and recuperation for each eye. Each surgery would entail a recuperation period lasting a couple of weeks after which husband would be able to return to work. Although husband's insurance would pay for some of the costs of surgery, husband estimates that his out-of-pocket medical expenses would be $10,000, not including the cost of traveling to California or Utah for the surgery. Husband has decided that he will proceed with the surgery. During the rehabilitation period, husband's ophthalmologist recommended, as he has for many years, that husband not work around dirt and dust.

During the marriage, the parties lived on a 13-acre parcel of farmland within Eugene's urban growth boundary. There were two dwellings on the property, and the parties lived in one. Wife, for the most part, managed the household finances. The parties acquired cars and equipment for husband's business, in addition to various retirement accounts. At trial, the parties stipulated to a complete property division. Pursuant to that stipulation, husband received the 13-acre parcel of farmland, several retirement accounts, all his business property and equipment, and approximately $107,000 in cash. Wife received her PERS retirement accounts, various items of furniture and personal property, and a $400,000 equalizing judgment.

After stipulating to a property division, the only questions remaining were spousal and child support. Husband argued that spousal support should not be awarded because wife will ultimately be in a better financial position than husband because of the investment income from the $400,000 equalizing judgment. Husband also argued that his income will decrease if he decides to proceed with the surgery or if his eyesight declines. Wife countered that her equalizing judgment would be reduced after she purchased a house. The court determined that wife's annual income was $13,692 and that husband's annual income was $50,000, with the exception of the two-year period of time when husband would have eye surgeries. The court set his income during that time at $30,000 a year. The trial court ultimately awarded wife spousal support as follows: $1,400 per month for five months; $500 per month for 27 months; and, after that period of time, $1,400 per month indefinitely. The 27-month period of time where husband was ordered to pay only $500 a month represented approximately the two-year period of time during which husband would have eye surgeries and his income would decrease.

Husband appeals, arguing that the trial court erred in setting spousal support.[1] Husband argues, as he did below, that the trial court erred in failing to take into account the fact that wife can invest her cash equalizing judgment and receive significant income and that husband's income will be less than what the trial court set because of his potential surgery and eye condition. With those considerations properly taken into account, husband contends that wife will actually have more income available to her than husband will have and, as a result, wife has no need for spousal support. Wife, in turn, maintains that she has to spend a bulk of her equalizing judgment to purchase a home and that the amount of income attributed to husband was well supported by the evidence.

In awarding spousal support, we must determine an amount of support that is "just and equitable" under the circumstances. ORS 107.105(1)(d) (1997), *amended by* Or Laws

---

[1] Husband also contends that the trial court erred when it determined wife's monthly income for purposes of child support. Because we find that husband's argument was not preserved, we decline to reach it. ORAP 5.45(4)(a); *State v. Hitz*, 307 Or 183, 766 P2d 373 (1988).

1999, ch 587, § 1.[2] The amount and duration are determined by the factors set forth in ORS 107.105(1)(d) (1997), including the length of the marriage, the age and health of the parties, the earning capacity of both parties, the number of dependents, and the standard of living established during the marriage. Our goal is to enable each party "to achieve an economic standard of living not overly disproportionate to that enjoyed during the marriage, to the extent that is possible." ORS 107.105(1)(d)(M) (1997).

■ We first consider husband's argument that an award of spousal support is precluded in light of the fact that wife received a lump sum cash award and will be able to earn investment income from that award. We begin by noting that we have expressly held that awards of spousal support are not precluded when one party receives a lump sum award, like the equalizing judgment at issue here. *See, e.g., Batt and Batt,* 149 Or App 517, 522, 945 P2d 517, *rev den,* 326 Or 233 (1997); *Powell and Powell,* 147 Or App 17, 25, 934 P2d 612, *rev den,* 326 Or 62 (1997). While ORS 107.105(1)(d) (1997) does not expressly address whether an award of spousal support is appropriate in light of an award of substantial assets, we have held that such an award may be appropriate where "the supporting spouse has the earning capacity to pay a level of support that will allow the other spouse to maintain a standard of living not overly disproportionate to that available to the parties during the marriage." *Batt,* 149 Or App at 522. The fact that wife received a $400,000 equalizing judgment does not preclude an award of spousal support, so long as it is otherwise just and equitable to award wife support.

■ We next turn to husband's argument that wife will receive investment income from that award and that wife will have no need for support. The record does not support husband's contention that the lump sum cash award, "if invested at eight percent, would give wife $32,000 in annual

[2] Although ORS 107.105(1)(d) was amended in 1999, those amendments apply only to petitions filed on or after October 23, 1999. Or Laws 1999, ch 587, § 3. Because the dissolution petition was filed before that date, we apply ORS 107.105(1)(D) (1997).

income without ever touching the principal[.]" The only evidence in the record about potential investment return came during husband's testimony regarding the parties' various retirement accounts. Husband testified that the average rate of return on those accounts had been "around ten percent" in past years. He also stated that the rate of return has varied depending on whether the money has been invested in mutual funds or certificates of deposit (CDs). Husband then testified that CDs typically have a seven percent rate of return. There was no other testimony about how much investment income wife's cash award would garner each year. In that respect, this case is distinguishable from the cases that husband cites in support of his argument. In *Batt*, the wife's expert testified that the wife could earn $35,000 a year in investment income. 149 Or App at 521 n 2; *see also Smith and Smith*, 168 Or App 349, 7 P3d 559 (2000) (the wife's financial expert testified that the wife's asset division would produce income of approximately $18,000 per month). Here, we have no similar evidentiary support for husband's contention that wife will earn $32,000 annually in interest income from her equalizing judgment.

Adding to the difficulties with husband's argument is the fact that the amount wife has to invest is indefinite. The amount of the lump sum cash award represents almost the entire amount of assets that wife is taking from this marriage. Pursuant to the stipulated judgment, husband was awarded the family home. Wife testified that she will use some of the equalizing judgment to purchase a new home. Her testimony revealed that homes in the area in which she wants to live range from $165,000 to $225,000. Thus, the amount of the remaining cash available to invest would decrease significantly.

In sum, given our case law holding that an award of spousal support may still be appropriate even if one spouse receives investment income, the lack of evidence in the record regarding wife's potential investment return, and the speculative nature of the amount wife may actually have to invest, the trial court did not err in refusing to consider wife's potential investment income in determining whether to award spousal support.

■ Husband's second argument—that the trial court incorrectly evaluated husband's earning capacity when setting spousal support, especially in light of his potential surgeries and eye condition—is not persuasive. The trial court determined that husband's earning capacity was $50,000 per year, an amount that was reduced to $30,000 per year for two years to offset the amount of time husband would be recuperating from surgery. The evidence in the record regarding husband's earning capacity shows that husband's income was $103,542 in 1995; $139,603 in 1996; $191,421 in 1997; and $230,157 in 1998. Wife presented further evidence that husband had earned nearly $70,000 in the last seven months of 1999, despite the fact that husband testified that his business has declined. Additionally, based in part on wife's evidence that husband routinely turned down or ignored calls for jobs, the trial court specifically found that husband had not put forth his best efforts to earn income in 1999. The record, then, supports the trial court's finding that husband will earn $50,000 a year.

The trial court's conclusion is supported by the evidence even in light of husband's argument that he is going to have surgery, that his eyesight may deteriorate, and that his income may correspondingly decline. Husband's difficulties with his eyes make his future income uncertain and somewhat difficult to predict. However, the trial court took into account husband's potential surgeries when it reduced his income to $30,000 a year for a two-year period of time, the length of time that husband estimated the surgery and recuperation would take. The evidence shows that, although husband will be in the hospital for one week per surgery and his recuperation period will last for two weeks after each surgery, he will otherwise be able to continue working between surgeries. If husband has five surgeries a year, he will still be able to work roughly three-fifths of the year, a figure that supports the trial court's finding. Even if the surgeries are unsuccessful, because the surgeries will first take place on husband's already blind left eye, husband will have the same vision that he had before the surgeries. Further, the evidence showed that husband's eyesight has not declined in recent years and that, if he proceeds with the surgeries, there is a

chance it will improve. The amount of spousal support must be determined based on conditions at the time of trial.[3]

To summarize, we agree with the trial court's finding that husband will earn $50,000 a year, with the exception of a two-year period of time in which he will earn $30,000 a year. Because husband does not otherwise argue that spousal support is not just and equitable under the circumstances, we affirm the trial court.

Affirmed.

---

[3] Should husband's eyesight decline, he may seek a modification in spousal support based on a substantial change in economic circumstances. ORS 107.135(2)(a).