In the Matter of the Marriage of

Anna E. FUERNSTEINER-PERIN,
*Respondent,*

*and*

Douglas Edward PERIN,
*Appellant.*

15-04-11941; A127770

153 P3d 151

George W. Kelly argued the cause and filed the briefs for appellant.

Inge D. Wells argued the cause for respondent. With her on the brief was Wells & Wells.

Before Edmonds, Presiding Judge, and Brewer, Chief Judge,* and Wollheim, Judge.**

EDMONDS, P. J.

---

* Brewer, C. J., *vice* Ceniceros, S. J.
** Wollheim, J., *vice* Linder, J.

## EDMONDS, P. J.

In this dissolution of marriage proceeding under ORS chapter 107, husband appeals the trial court's judgment that provided for an unequal distribution of marital property to husband and wife. On appeal, husband argues that the property division was not "just and proper" under the circumstances and that the trial court should have awarded husband and wife an equal share of the marital assets. We review *de novo*, ORS 19.415(3), and modify the judgment.

Husband and wife were married for 14 years and have no children together. When the marriage began, wife owned a house in Eugene, which she had lived in and owned for over 20 years, and a profit sharing plan that had accrued as the result of her work as a dental hygienist. Husband brought no significant assets into the marriage. The parties lived in wife's house for most of their marriage; however, husband's name was never added to the title as a joint owner. The parties each contributed to one bank account during their marriage, and the cash in that account was used to pay for marital needs, despite the fact that it was held only in wife's name.

Shortly after their marriage in 1990, husband and wife formed a construction company called All Oregon Construction (All Oregon). Wife became the majority shareholder in the company so that it could qualify for preference in obtaining government contracts. Husband was principally involved in running the company, and wife assisted in secretarial and bookkeeping roles.

One of the projects undertaken by All Oregon was to remodel the house that wife had brought into the marriage. Substantial modifications were made by All Oregon to the house, including the addition of a master bedroom, a complete kitchen remodel, and a second-story addition. Husband and wife also purchased the neighboring house for the purpose of using its existing garage as an office for All Oregon. After the remodeling project was completed, the house had increased in size from 1,100 square feet to approximately 2,200 to 2,400 square feet. In addition to the remodel, All Oregon provided funds to purchase IRAs for husband and

wife. Several of the IRAs were jointly held by the parties and disposed of by husband during the marriage. One IRA remained after husband's sale because it was held only in wife's name.

During the latter part of their marriage, husband and wife purchased two acres of bare land in Kawela Plantation located on the island of Molokai, Hawaii. Shortly thereafter, the parties decided to permanently relocate to Hawaii. Husband and wife planned to construct a yurt on the property to provide temporary housing until they could build a permanent residence. The yurt was prefabricated in Oregon by husband and shipped to Hawaii. Because of their planned move to Hawaii, the parties sold the house that wife had brought into the marriage.

The move to Hawaii proved to be problematic for the parties. They had failed to obtain a building permit for the yurt and to seek permission for its construction from the Kawela Plantation homeowner's association. The failures caused some delay in completing the structure, requiring husband to return to Oregon to work. When husband received notice that he could resume construction on the yurt, he returned to Hawaii. It was at that time that the parties decided to separate. Based on their decision to separate, husband returned to Oregon, and wife remained in Hawaii. After the separation, wife learned that the yurt had not been constructed in accordance with the existing building code and that the local authorities had deemed it to be an "illegal dwelling." In order to bring the yurt into compliance with code requirements, wife was required to expend significant funds to pay for modifications. She was also required to pay fines for the purpose of obtaining an "after the fact" permit for the construction of the yurt.

When the parties' dissolution proceeding began in 2004, husband resided in Oregon and made his living by taking contract jobs in the construction trade. Wife remained in Hawaii, earning income from her work as an artist. The assets owned by the parties at this time included several parcels of real property, personal property, and other assets including the yurt and two acres in Kawela Plantation. In addition, the parties possessed, either solely or jointly, the

following assets at the time of dissolution: (1) four vehicles, (2) an IRA, (3) a profit sharing plan that had appreciated in value since the marriage, (4) cash in a bank account, (5) original paintings by wife, (6) household property and items in storage, and (7) a motor home.[1] Additionally, husband expected to recover an unknown amount from an under-[f]insured motorist claim that he had made against his insurance company as the result of an automobile accident. Also, by the time of dissolution, All Oregon had been dissolved. However, the parties owed a large amount of debt, mostly arising from outstanding mortgages on their properties and from debts still owed by All Oregon.

The case went to trial and, after hearing the evidence, the trial court ordered the parties to sell all of their real properties, with the exception of the Kawela property. It also ordered that the proceeds from the property sales were to be used to pay off all the marital debts and, in the event that there were any remaining monies, those sums were to be divided equally between husband and wife. The court awarded the Kawela property to wife. It also awarded to wife her premarital profit sharing plan (including the appreciation that had accrued during the marriage), her IRA, her paintings, the remaining cash in the bank account, and two cars. Husband received the remaining two vehicles, the motor home, and the value of any monies that he might obtain from pursuit of his underinsured motorist claim. Finally, the court ordered that all other property was to be divided equally between the parties.

On appeal, husband contends that the trial court's property division was not "just and proper under the circumstances," as ORS 107.105(1)(f) requires.[2] Specifically, he

---

[1] It is unclear from the record if the motor home was acquired during the marriage. However, the record indicates that the loan on the motor home was jointly held. Therefore, we assume, for purposes of our review, that it was obtained during the marriage and thus part of the marital property at the time of dissolution.

[2] ORS 107.105 provides, in part:

"(1) Whenever the court renders a judgment of marital * * * dissolution * * * the court may provide in the judgment:

"* * * * *

"(f) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances."

argues that he is entitled to an equal share of all assets remaining after the parties' marital obligations are paid. Husband requests that we order the Kawela property sold and that he be awarded whatever portion of the sale proceeds are needed to equalize the property award. Conversely, wife argues that the trial court's award, although disproportionate, is just and proper in light of the fact that she brought substantial property into the marriage, including the Eugene house, the sale of which enabled the parties to make improvements upon the Kawela property. Further, wife argues that husband did not contribute any significant value to improvements on the Kawela property in light of the fact that the yurt was not constructed in accordance with building code requirements.

The framework for analyzing the division of marital property in a dissolution of marriage proceeding under ORS 107.105(1)(f) is expressed in *Kunze and Kunze*, 337 Or 122, 92 P3d 100 (2004). *Kunze* describes a step-by-step process for making a "just and proper" division of marital property under the statute.[3] That process is based on the legislative intent of ORS 107.105(1)(f), which directs the court to divide property at dissolution in a manner that is "just and proper in all the circumstances." The first step in the process is to identify the parties' marital assets by determining when the parties acquired the property in issue. *Kunze*, 337 Or at 134. Marital assets are "any real or personal property * * * acquired by either of the spouses * * * during the marriage." *Stice and Stice*, 308 Or 316, 325, 779 P2d 1020 (1989). "If the parties acquired the property at issue before the marriage, then the court considers only what is 'just and proper in all the circumstances.'" *Kunze*, 337 Or at 134. However, "[i]f a party establishes that the property at issue is a marital asset, * * * then the court must apply the rebuttable presumption of equal contribution under ORS 107.105(1)(f) * * *." *Id.*

---

[3] "Marital property is the real or personal property, or both, of either or both of the parties." It constitutes the "entire class of property subject to the dispositional authority of the court * * *." *Massee and Massee*, 328 Or 195, 206, 970 P2d 1203 (1999) (internal citations omitted).

■ To rebut the presumption of equal contribution, a party must prove by a preponderance of the evidence that the acquisition of the disputed marital assets did not result from an equal contribution from the other spouse. *Tsukamaki and Tsukamaki*, 199 Or App 577, 582-83, 112 P3d 416 (2005) (citing *Kunze*). If the party seeking to overcome the presumption can show that the acquisition was uninfluenced—directly or indirectly—by the other spouse, the presumption is overcome. *Stice*, 308 Or at 325-26. Otherwise, "the court must find that both parties have contributed equally to the acquisition of [the property]" and, therefore, a "just and proper" division of that property would usually be an equal division. *Kunze*, 337 Or at 134.

■ On appeal, husband does not challenge that part of the trial court's ruling that relates to the sale of their investment properties or the division of personal property located in storage. Therefore, we limit our analysis to the remaining property. It includes: (1) the Kawela Plantation property and yurt, (2) cash in a bank account, (3) wife's IRA, (4) wife's profit sharing plan plus its appreciation, (5) wife's paintings, (6) vehicles, (7) husband's uninsured motorist claim, and (8) the motor home. Applying the above rules, the portion of the profit sharing plan acquired before the marriage is not a marital asset. All other assets are marital assets and are subject to the presumption of equal contribution. With regard to the appreciation of wife's profit sharing plan during the marriage, wife's IRA, and wife's paintings, we conclude that wife has rebutted the presumption of equal contribution. Wife obtained her profit sharing plan prior to marriage and, during the marriage, neither husband nor wife made contributions to the plan. Similarly, wife's IRA was in her name only, and husband did not contribute to it during the marriage. The fact that it was purchased by the parties' jointly held corporation, All Oregon, does not alter our view because the record demonstrates that the parties intended the fund for the benefit of wife alone. As with the appreciation of the profit sharing plan, husband's contribution to the IRA was, at most, passive. Passive gain without any input of marital assets or joint marital effort suffices to overcome the presumption of equal contribution. *Terhaar and Polance*, 171 Or App 112,

117, 14 P3d 657 (2000), *rev dismissed*, 333 Or 596 (2002). Husband also did not contribute to the acquisition of wife's paintings. The value of the paintings can be attributed exclusively to wife's artistic skill, and the record does not support the inference that husband supported wife so that she could pursue her career as an artist.

■ We also find that the presumption of equal contribution has not been rebutted as to the remainder of the assets in issue. With respect to the Kawela property and yurt, the cash in the bank account, the motor home, and the vehicles, wife has failed to rebut the presumption of equal contribution because those assets were acquired due to the contributions of both spouses. Specifically, the down payment for the Kawela property came from All Oregon's funds, a corporation to which both husband and wife contributed. We do not find persuasive wife's argument that her contributions to repairing the yurt and causing it to comply with code requirements are enough to overcome the fact that both parties initially contributed to the acquisition of the property by use of funds from their jointly held business and their joint endeavors.

■ Similarly, we find that there is not sufficient evidence to overcome the presumption of equal contribution regarding the funds remaining in the parties' joint bank account—cash that was realized from the sale of the residence in Eugene. It is correct that wife contributed to the acquisition of the cash by bringing her house into the marriage, but husband also contributed by investing time, money, and effort into substantially remodeling it. The money realized from its sale constitutes an asset that can be attributed to the efforts of both spouses. The same characterization applies to the vehicles owned by the parties, as well as the motor home. As such, wife has not overcome the presumption of equal contribution regarding any of those assets.

■ Finally, we turn to husband's potential award from his pursuit of an underinsured motorist claim. The claim results from an automobile accident that husband was involved in during the marriage. He suffered serious injuries from the accident, and litigation was commenced against a third-party tortfeasor because of those injuries. At trial, the

jury found in husband's favor, and he was awarded a sum of money. Now, husband seeks an additional sum of money from his own insurer, alleging that the driver who caused his injuries was underinsured. However, he does not know what recovery will occur from that claim, if any. The law treats personal injury awards as a form of property. *Pugh and Pugh,* 138 Or App 63, 68, 906 P2d 829 (1995), *rev den,* 332 Or 644 (1996). But, if the injured spouse can show that the other spouse had no part in the action or settlement and claims no damages for loss of consortium, the personal injury award should be treated as separate property belonging to the injured spouse. *Peterman and Peterman,* 94 Or App 190, 193, 764 P2d 962, *rev den,* 307 Or 514 (1989). In this case, wife had no part in the action, nor does she seek a claim for damages for loss of consortium. We conclude, therefore, that husband has sufficiently rebutted the presumption of equal contribution as to his personal injury claim.

We turn now to the final step of the analysis. Regardless of whether the statutory presumption of equal contribution has been rebutted, "ORS 107.105(1)(f) ultimately authorizes and requires courts to distribute any and all of the spouses' property, including separate property, as may be just and proper in all the circumstances." *Stice,* 308 Or at 326 (internal quotation marks omitted). This inquiry requires us to take a holistic view of the property division, after completing steps one and two, and instructs that we must consider the "equity of the property division in view of all the circumstances of the parties." *Kunze,* 337 Or at 135. Specifically, we must "take[ ] into account the social and financial objectives of the dissolution, as well as *any other* considerations that bear upon the question of what division of the marital property is equitable." *Id.* (Emphasis added.)

In *Kunze,* the court recognized that the equity of a marital property division is necessarily dependent on the individual circumstances of the parties but, in the interest of stability and predictability, there are specific equitable considerations that a court must consider. Those considerations include: (1) the preservation of the assets, (2) the achievement of economic self-sufficiency for both spouses, (3) the particular needs of the parties, and (4) the extent to which

the parties have integrated assets through commingling. *Id.* at 136.

The evidence shows that wife came into the marriage with valuable property and virtually no outstanding debt. During the marriage, she leveraged her property for the good of the marriage, using it as equity and capital for the creation of All Oregon and to purchase marital investment properties. Further, she used proceeds from the sale of her house to make payroll for All Oregon and to pay off a line of credit that was secured by the real property that she brought into the marriage. Additionally, wife had no choice but to expend more marital funds to ensure that the Kawela property was either liveable or sellable.

On these facts, it is just and proper to award the Kawela property to wife. Indeed, that asset would probably not currently exist but for her efforts. Without the Kawela property, she will have no place to live, and awarding it to her will assist her in acquiring economic self-sufficiency by allowing her to remain in Hawaii and to continue her career as an artist, her only current source of income. Although the Kawela property constitutes, in part, a realization of the parties' extensive commingling of assets over the years of their marriage, we do not view that fact as sufficient to overcome the balance of other equitable considerations that support the award of the property to wife. We therefore agree with the trial court's award of the Kawela property to wife.

We turn now to the parties' bank account. The $27,000 remaining in the account was realized from the sale of the marital residence when the parties made the decision to move to Hawaii. As we described above, husband and wife contributed equally to the acquisition of the appreciation in the Eugene house after they married and before it was sold. Wife testified that the yurt is still presently unfinished and will require further work to make it fully functional. Nonetheless, in light of the parties' contributions to this asset, we find it just and proper to divide the account between the parties.

Finally, we perceive no reason to disturb the trial court's award to wife of her paintings, her profit sharing plan

and its appreciation, and her IRA in light of our earlier findings. In our view, there are no other equitable considerations that outweigh the above considerations. Although the value of the assets awarded to husband is disproportionate to the value of the assets awarded to wife, those assets constitute more than what he brought into the marriage. He leaves the marriage with several vehicles, an occupation that will support him, and minimal debt. The latter fact has significant weight in our view. During the latter part of the marriage, the parties acquired substantial debt. In effect, the trial court's rulings permitted both parties to escape from that debt load. Husband will also receive the entire sum of whatever amount, if any, is due from his personal injury claim. On balance, we conclude that the above division of the marital property is equitable to both parties.

Judgment modified to provide that the parties' bank account be equally divided; otherwise affirmed.