Argued and submitted February 26, affirmed October 15, 2008

In the Matter of the Marriage of

Linda M. ENGLISH,
*Petitioner-Respondent,*
*and*

James D. ENGLISH, Jr.,
*Respondent-Appellant.*

Klamath County Circuit Court
0502626CV; A133289

194 P3d 887

Nathan J. Ratliff argued the cause for appellant. With him on the brief was Ratliff & Ratliff, P.C.

Barbara M. DiIaconi argued the cause for respondent. With her on the brief was Boivin, Uerlings and DiIaconi, P.C.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

SERCOMBE, J.

### SERCOMBE, J.

Husband appeals a marriage dissolution judgment, seeking modification of the property division and compensatory spousal support awarded to wife. The parties lived together for the first 14 years of their marriage, but lived separately for the next 11 years. The issues in the case concern the legal effect of that separation on the property division and spousal support awards. Husband asserts that the trial court erred in finding that evidence of the manner of the parties' separation did not rebut the presumption of equal contribution to marital assets obtained by husband during that time and in awarding wife compensatory spousal support for her alleged contributions to husband's career during the marriage. On *de novo* review, ORS 19.415(3), we affirm.

Husband and wife were married in 1981 and lived together for 14 years in Klamath Falls. They separated in May 1995 when husband moved into an apartment. In September 1996, husband relocated to North Carolina to begin duties as a plant manager. Wife remained in the marital home in Klamath Falls with the parties' two children. That transcontinental distance between the parties' residences continued for the next 11 years and through the time of the dissolution proceedings. At one time during the first few months of the separation, the parties discussed reconciling. They talked about their son's academics once. Otherwise, the parties did not directly communicate or discuss ongoing or future finances after their separation.

Husband initially filed for dissolution in 1995, shortly after he and wife separated. Husband voluntarily dismissed that action because he was not committed to ending the marriage and was concerned about the effects of a divorce on their children. In 2003, husband filed a second petition for dissolution in North Carolina. That action was ultimately dismissed to facilitate settlement discussions and because of concerns about jurisdiction. In June 2005, wife realized that reconciliation with husband was not likely and filed the petition for dissolution that is the subject of this appeal. Wife testified that, before that time, she aspired to reconciliation and retirement with husband.

At the time of the 2006 trial, wife was 44 years old, husband was 46, and their daughter and son were over 18 years of age. Both parties were in good health. Wife had a high school education and had worked full time as a personal banker since 1998. Before 1998, wife worked sporadically in retail sales and as a housecleaner, but mostly was a home-maker. Wife's gross income was $24,229 in 2005. Husband had approximately two years of post-secondary education, largely provided through his employer, and had worked for Jeld-Wen, Inc., since 1980. He began as an entry-level hourly wage employee and received several promotions before becoming the general manager of a Jeld-Wen manufacturing plant in Marion, North Carolina. Husband's gross income for 2005 was $210,665.

Neither party brought substantial assets into the marriage. In 1987, the parties purchased the marital home in Klamath Falls using husband's inheritance money. They also acquired an individual retirement account (Lord Abbot fund) with money from the inheritance. The parties held joint bank and personal credit accounts. Over the course of their 25-year marriage, husband acquired Jeld-Wen stock, assets in an Employee Stock Ownership and Retirement Plan (ESOP), a Jeld-Wen pension, personal property including two vehicles and a boat trailer, and a personal residence in North Carolina. Wife acquired a retirement plan from her employer, some personal property, and no other substantial assets.

After their separation in 1995, the parties opened individual bank accounts, and husband removed his name from all joint credit accounts. However, husband and wife remained joint owners of the marital home, and husband kept his name on several of the house utility bills. Husband claimed ownership of the Klamath Falls home in a loan application for funds to purchase the North Carolina house. Husband and wife filed joint tax returns with state and federal authorities through 2004, claiming mutual dependency. Wife initially filed separate tax returns for the 2004 tax year, but amended those filings to joint returns at husband's behest.

During their 11-year separation, husband voluntarily provided wife with funds to pay the mortgage and utility

charges on the Klamath Falls home and additional money for support of the children. Husband generally paid wife $1,750 each month. However, that amount varied depending on whether the parties' children were living with wife and, at its low, was $550 per month. Husband paid their daughter's college expenses and other education-related expenses of the children. Husband provided health care coverage for wife and the children through his employer. The children resided with wife through their high school years, except for two years when the son lived with his father during his high schooling. The children stayed with husband for four weeks during the summer and during vacations.

At trial, husband argued that the parties' separation in 1995 was a "complete and total termination of the marital relationship" and, therefore, the court should divide equally only those marital assets acquired before the 1995 separation and award to him his property acquired thereafter. Said another way, husband contended that the personal property he obtained post-separation, namely the post-separation contributions to his ESOP and its appreciation and his stock acquisitions, was obtained by his efforts alone, without any direct or indirect contribution by wife. Conversely, wife argued that she had contributed to husband's accumulation of post-separation assets because she had been a homemaker and had raised the parties' children with little day-to-day support from husband.

After hearing testimony, the trial court agreed with wife and determined that "the parties remained a married couple for the purposes of a property division." With respect to the post-separation Jeld-Wen stock acquired by husband, the trial court opined:

> "The court concludes [husband] has not rebutted the presumption of equal contribution. The stock rights were obtained in 1995 at a time the parties were residing together. [Wife] remained in Klamath Falls in her traditional role as homemaker and mother to continue to raise the children in their hometown, while father continued in his traditional role as bread winner in a new community at a greater income.

"[Wife's] willingness to assume this role substantially contributed to husband's enhanced earning capacity by freeing him from the burdens of child rearing while he was pursuing job related education that secured for him a position where his labor is now generously rewarded."

The trial court made a similar determination with respect to the post-separation ESOP assets:

"The court's discussion, immediately above, regarding [wife's] contribution to [husband's] enhanced earning capacity is applicable here. [Wife's] homemaker role freed [husband] from those duties and allowed him to concentrate on his employment. The value of the ESOP shall be divided equally * * *."

Based on those determinations, the court made the following property division:

| ASSET | HUSBAND | WIFE |
|---|---|---|
| Klamath Falls home* | | $166,470 |
| North Carolina home* | $65,130 | |
| Jeld-Wen Stock | $101,972 | $101,972 |
| Jeld-Wen ESOP | $478,627 | $478,627 |
| Jeld-Wen Pension | $8,594 | |
| South Valley Bank retirement/discretionary fund | | $7,631 |
| Lord Abbot fund | | $12,435 |
| 2001 Jeep Grand Cherokee | $10,065 | |
| 2003 Dodge Ram | $13,000 | |
| 1996 Reinell boat and trailer | $12,000 | |
| TOTAL | $689,388 | $767,135 |
| Equalizing Judgment | $38,873 | ($38,873) |
| **TOTAL AWARD** | **$728,261** | **$728,262** |
| *reflects value of home less encumbrances and / or necessary repairs. | | |

Before the trial court, husband argued that wife should not be entitled to spousal support at all, but at most wife should be awarded transitional support for two years in the amount of $750 per month, the amount required to cover the immediate difference between wife's income and expenses. Wife, on the other hand, requested $7,000 per month in support for 10 years because she lived a modest life during the entirety of the marriage in order to support the

children and husband's career and has a low potential for any substantial increase in her income while husband has enjoyed a steady increase in his income since the parties' separation. The trial court ultimately awarded wife compensatory support in the amount of $2,100 per month for a period of 10 years. In its letter opinion, the court stated:

> "[Husband] will continue to receive substantial bonuses and salary increases while [wife] can expect to receive no more than modest salary increases and small bonuses. For the past 11 years, [wife] has reduced her standard of living, while [husband] expanded his standard of living. The court finds the sum of $2,100 per month to be a just and equitable sum to allow [wife] as compensatory spousal support. This will allow [wife] to enjoy an appropriate standard of living not overly disproportionate to that she maintained during the last 11 years."

On appeal, husband reiterates his arguments in two assignments of error. First, husband contends that the trial court erred in ruling that he failed to rebut the presumption of equal contribution to assets acquired by him during the parties' 11-year separation.[1] Second, husband asserts that the court erred in awarding $2,100 per month in compensatory spousal support to wife because there was no evidence that wife made a significant contribution to his earning capacity and the amount exceeds wife's demonstrated need.

■ We begin by reviewing the property division ordered by the trial court. That analysis is governed by ORS 107.105, which provides, in part:

> "(1) Whenever the court renders a judgment of marital * * * dissolution * * *, the court may provide in the judgment:
>
> "* * * * *
>
> "(f) For the division or other disposition between the parties of the real or personal property, or both, of either or

---

[1] On appeal, husband appears to take issue only with the equal division of his ESOP and stock. There is no contention, by either party, that the trial court erred in dividing the other assets: namely, the Klamath Falls and North Carolina homes, husband's Jeld-Wen pension, wife's retirement fund, the Lord Abbot fund, and husband's cars and boat. Therefore, we limit our discussion to whether the trial court erred in equally dividing the value of husband's ESOP and stock.

both of the parties as may be just and proper in all the circumstances. A retirement plan or pension or an interest therein shall be considered as property. The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."

■■ The framework for analyzing the division of marital property under ORS 107.105(1)(f) was described in *Kunze and Kunze*, 337 Or 122, 92 P3d 100 (2004). *Kunze* sets forth a step-by-step process for determining a just and proper division of marital property. *See Fuernsteiner-Perin and Perin*, 211 Or App 23, 153 P3d 151, *rev den*, 343 Or 33, 161 P3d 943 (2007). The first step is to identify when the parties acquired the property at issue. *Kunze*, 337 Or at 134. Property acquired before the marriage is subject only to a division that is "just and proper in all the circumstances." *Id.* However, "[i]f a party establishes that the property at issue is a marital asset,[2] * * * then the court must apply the rebuttable presumption of equal contribution under ORS 107.105(1)(f) as its next step in the analysis." *Id.* A party may rebut the presumption of equal contribution by proving, by a preponderance of the evidence, that the acquisition of disputed marital assets did not result from an equal contribution, directly or indirectly, from the other spouse. *Fuernsteiner-Perin*, 211 Or App at 29.

■■ Once the court formulates a preliminary division of marital assets by applying the statutory presumption, it then reviews the equity of the property division in view of all of the circumstances of the parties, regardless of whether the statutory presumption of equal contribution has been rebutted. *Kunze*, 337 Or at 135. That equitable consideration "takes into account the social and financial objectives of the dissolution, as well as any other considerations that bear upon the question of what division of the marital property is equitable." *Id.* Those equitable criteria will vary according to the individual circumstances of the parties, but can include

---

2 Marital assets are "any real or personal property * * * acquired by either of the spouses * * * during the marriage." *Stice and Stice*, 308 Or 316, 325, 779 P2d 1020 (1989).

"the preservation of assets; the achievement of economic self-sufficiency for both spouses; the particular needs of the parties and their children; and * * * the extent to which a party has integrated a separately acquired asset into the common financial affairs of the marital partnership through commingling."

*Id.* at 136 (citations omitted). The trial court has discretion to determine what property division is "just and proper in all the circumstances." *Id.* "This court will not disturb that discretionary determination unless it concludes that the trial court misapplied the statutory and equitable considerations that ORS 107.105(1)(f) requires." *Id.* (citing *Haguewood and Haguewood*, 292 Or 197, 199-204, 638 P2d 1135 (1981)).

As stated above, husband's concern with the trial court's property division involves the statutory presumption of equal contribution and, specifically, the trial court's determination that he had not rebutted that presumption as to the post-separation acquisition of his ESOP assets and stock.[3] Husband argues that a long-term separation supports a finding that the presumption of equal contribution is rebutted as to post-separation individually held assets. In his view, that is particularly true where, as here, the parties exhibited financial independence, had little, almost nonexistent communication for the entirety of their 11-year separation, and were living separate lives in separate parts of the country. Given those facts, husband argues that he should be awarded all of his independently held post-separation assets because "[wife] made no contribution whatsoever, economic or otherwise, to the acquisition of any of the personal property, real property, retirement, or increase in earning capacity resulting from [husband's] employment after their separation in 1995, and particularly after his move to North Carolina in 1996."

We agree that evidence of a long-term separation, together with financial autonomy of both parties during the

---

[3] Husband does not dispute that the properties at issue are marital assets and subject to the statutory presumption of equal contribution. Further, husband does not dispute that wife contributed to the preseparation value of his ESOP assets and stock.

period of separation, may be sufficient to rebut the presumption of equal contribution under ORS 107.105(1)(f). That is the principle identified in *Lemke and Lemke*, 289 Or 145, 611 P2d 295 (1980). In *Lemke*, the parties were separated for 20 years before the dissolution proceeding. There, the husband and the wife had separated after eight years of marriage and then voluntarily divided their property between them. The wife raised and supported the parties' seven children with public assistance, minimum wage employment, and child support payments. The husband made child support payments as ordered in a welfare recovery proceeding. During the separation, wife acquired no assets and no net worth. On the other hand, the husband had acquired modest assets and net worth from employment and property investment. At the time of trial, the husband had a monthly salary that was approximately six times that of the wife. The court found, based on those facts, that "the parties ha[d] led separate lives for 20 years" and that that fact "rebut[ted] the presumption of equal contribution to the marital estate." *Id.* at 148. On that basis, the court concluded that "it [was] 'just and proper' within the policy of the statute that a spouse who acquires property during an extended period of mutual financial independence preceding a dissolution is to be allowed to retain that property." *Id.*

*Lemke* is inapposite because the parties in the present case did not divide their property on separation. Instead, they maintained joint ownership of the family home and continued to be jointly responsible for its utility services and upkeep. Husband continued to be a debtor on the Klamath Falls home mortgage and utility bills and listed the house as a personal asset in a loan application. More importantly, the wife in *Lemke* supported herself without the assistance of her husband during their separation, *i.e.*, they did not have a "support-dependency relationship," as described by the court. Here, wife relied on husband for substantial financial assistance during the entirety of their time apart.

We conclude that husband did not successfully rebut the presumption of equal contribution in this case. First, wife provided substantial support to the marriage through her homemaking responsibilities. *See Massee and Massee*, 328 Or

195, 202-03, 970 P2d 1203 (1999) ("A homemaker spouse contributes to the acquisition of marital assets, because the performance of domestic tasks by one spouse frees the other spouse to devote energy and concentration to other tasks that may generate marital assets."). She raised the parties' two children for 11 years with little direct involvement by husband.[4] Even though husband provided some financial support during those years, he was essentially free from the day-to-day requirements of child rearing. Because of wife's contribution to the marriage, husband was able to travel to North Carolina for employment and was free of the daily household responsibilities that come with marriage and parenthood, allowing him time to concentrate on his career and the accumulation of assets related to his earnings. Husband testified that he worked long hours during this period. As a result of that labor, husband paid for or earned the payment of stock and ESOP assets. Wife's contribution to those efforts was substantial.

Second, the parties held themselves out as married. Husband deliberately withdrew his 1995 dissolution petition because he wanted to maintain the appearance of marriage with wife. Husband continued to file joint tax returns with wife, representing to federal and state tax authorities that husband and wife were mutually dependent, a representation we find to be significant. Husband testified that "we all benefitted" from that holding out, and husband enjoyed the advantage of tax deductions and decreased tax liabilities. In that regard, appearances count. Despite the geographic distance between the parties, husband's actions did not evidence a desire to completely separate himself from his marriage; indeed, he retained substantial benefits from keeping his marriage intact. Instead, the record reflects a continued connectedness to wife and an appearance that the parties were still conducting themselves as a marital unit.

Third, as noted earlier, there was not a separation of the parties' financial affairs, and the parties commingled some of their assets. Although it is true that husband and

---

[4] As noted, the parties' son moved to North Carolina to live with husband for approximately two years while he was in high school. The son then moved back to Klamath Falls to live with wife for the duration of his high school years.

wife maintained separate bank accounts, husband continued to pay the mortgage on the Klamath Falls home and several of the house utility bills. Husband provided medical coverage to wife and the children through his employer's health insurance and, most notably, he continued to file joint tax returns with wife through 2004. Those actions show a commingling of their financial affairs. Husband has not shown that wife did not contribute indirectly to the acquisition of the stock and ESOP assets. For those reasons, we conclude that the presumption of equal contribution applies to those marital assets.

■     The remaining issue is whether an equal division of those assets is "just and proper in all the circumstances." ORS 107.105(1)(f). The equities of that result are affected by the same factors relevant to the equal contribution analysis—the substantial support of husband's career by wife through her assumption of homemaking responsibilities, the holding out of the parties as married, and the commingling of some of their assets. Moreover, during the period of separation, husband retained more of his earnings for investments than he might have had the parties divorced earlier. Husband conceded at oral argument that it was "probably correct" that he paid less in family support during the separation than he would have had to pay in spousal and child support following a dissolution of the marriage. We recognize that "[s]pousal support and property division should not be regarded as a delayed compensation for the inadequacy of or failure to avail oneself of procedures to enforce greater contemporaneous child support." *Lemke*, 289 Or at 149. Nonetheless, it is a relevant equitable factor that wife's lower standard of living during the separation allowed husband to invest more into the ESOP and stock than otherwise would have been the case.

An equal division of property in this case is equitable because it leaves husband with substantial assets that can generate future income and, at the same time, recognizes wife's contribution to the marital unit. Further, the award will enable wife to "begin post-marital life with a degree of economic self-sufficiency." *Pierson and Pierson*, 294 Or 117, 124, 633 P2d 1258 (1982). For all of those reasons, we affirm the division of property ordered by the trial court.

■■ Husband's second assignment of error relates to the nature and amount of the ordered spousal support. ORS 107.105(1)(d)(B) provides the criteria to be used in determining whether to award compensatory spousal support and in what amounts. That statute provides that compensatory spousal support is appropriate when

> "there has been a significant financial or other contribution by one party to the education, training, vocational skills, career or earning capacity of the other party and when an order for compensatory spousal support is otherwise just and equitable in all of the circumstances. The factors to be considered by the court in awarding compensatory spousal support include but are not limited to:
>
> "(i) The amount, duration and nature of the contribution;
>
> "(ii) The duration of the marriage;
>
> "(iii) The relative earning capacity of the parties;
>
> "(iv) The extent to which the marital estate has already benefitted from the contribution;
>
> "(v) The tax consequences to each party; and
>
> "(vi) Any other factors the court deems just and equitable."

Thus, to be eligible for an award of compensatory support, a party must first make a threshold showing that he or she has made a "significant financial or other contribution * * * to the education, training, vocational skills, career *or* earning capacity of the other party." *See Austin and Austin*, 191 Or App 307, 314, 82 P3d 170 (2003) (emphasis in original). Even if that threshold is met, the trial court must consider the nonexclusive list of factors set forth in ORS 107.105(1)(d)(B)(i) to (vi) and may make an award *only if* it is "just and equitable in all of the circumstances." *Id.*

Husband contends on appeal that the trial court's ruling contradicts the evidence and is based on an incorrect assumption that wife made a significant contribution to husband's earning capacity. Essentially, he argues that wife has failed to meet the threshold requirement of a "significant contribution" to husband's earning capacity as outlined by ORS

107.105(1)(d)(B). Additionally, he asserts that an award of transitional support, not compensatory support, is appropriate in this case. Wife counters that "through sacrifice and through the continuation of the marriage [she] contributed directly to Husband's ability to progress in his employment, to obtain additional training and to increase his monetary contributions to his ESOP and stock purchase plans through his employer," and thus the trial court's award of compensatory support was justified.

■ We note first that the trial court did not err in awarding compensatory support instead of transitional support. Transitional support is typically awarded in situations where one spouse has been out of the workforce for an extended period of time and needs training or on-the-job education, or would have difficulties reengaging employment. *See Van Riesen and Cross*, 217 Or App 611, 619, 177 P3d 34 (2008) (transitional support appropriate where husband was unemployed at time of trial and would have difficulty finding suitable work in his field and at the salary level he previously enjoyed); *Austin*, 191 Or App at 325 (transitional support is appropriate for a spouse who needs to prepare before reentering the job market). That is not the case here. Wife has a full-time position that she has held since 1998. At the time of trial, wife had not been out of the workforce for any extended period of time, nor did she need assistance in obtaining future employment.

We believe that the trial court's award of compensatory spousal support was proper under ORS 107.105(1)(d)(B). First, we find that wife has met the threshold requirement of a significant contribution to husband's training, career, and earning capacity. As stated earlier, wife's maintenance of the marital home and responsibility as the primary custodial parent to the parties' two children for 11 years, as well as her homemaker contribution in the years before the separation, allowed husband to advance his career with Jeld-Wen and to enhance his yearly income. Because of wife's contribution in that manner, husband was able to obtain training and education during his employment and advance within the corporate hierarchy. Husband directly and indirectly benefitted in his career and earning capacity from wife's contribution to the marriage. Because we find that the statutory threshold

has been met, our next step is to determine whether the $2,100 award to wife was "just and equitable in all the circumstances."

To make that determination, we must consider the nonexclusive list of factors enumerated in ORS 107.105(1)(d)(B). That determination is fact specific. *Austin*, 191 Or App at 321. With regard to the factors described in ORS 107.105(1)(d)(B)(i) and (ii), we have already determined that wife provided substantial support to husband's career during the period of a long-term marriage. Under ORS 107.105(1)(d)(B)(iii), the evidence showed a stark contrast in the relative earning capacities of the parties. Wife's annual income for 2005 was $24,229. Wife has received one promotion since 1999 and annual bonuses in the amount of $600 to $1,200 per year. There is no evidence that wife's income will change in any substantial way in the future.[5] In contrast, husband's annual salary for 2005 was $210,665. Husband has enjoyed significant promotions and salary increases during his employment with Jeld-Wen, and his normal annual bonus is $125,000.[6] Thus, the evidence reflects that this was a long-term marriage where wife contributed to husband's professional success and earning capacity and that there will be lifelong disparities in the parties' earning potential.

ORS 107.105(1)(d)(B)(iv) directs consideration of "the extent to which the marital estate has already benefitted from the contribution[s]." That factor requires the court to look at the totality of the dissolution judgment, specifically to the property division, to determine how, and if, spousal support should be awarded based on the property division ordered by the court. *See Miller and Garren*, 208 Or App 619, 145 P3d 285 (2006) (equitable principles that underlie a spouse's claim for a share of property and that spouse's claim

---

[5] Wife testified at trial that she can obtain a promotion only if a higher level position is vacated or if she obtains additional education.

[6] Husband testified that Jeld-Wen restructured its bonus and salary structure, and he was uncertain if his salary and bonus would continue to improve. However, because husband has provided no evidence of what his new income structure might be, we cannot speculate that it would be any different than what he has earned in the past. *See Mask and Mask*, 143 Or App 377, 383, 923 P2d 1304 (1996) ("Absent specific evidence indicating that [husband's income] is going to change, it is reasonable to assume that his earnings will continue at or near their present value.").

for spousal support may overlap). Here, wife's contribution to her husband's training, career, and earning capacity was an equitable factor considered in dividing the couple's property. Those contributions affected both parties' past accumulation of wealth and each of their future earning capacities. The equal division of property affects the amount of compensatory spousal support, but does not obviate the need to provide that support in the future.

The property awarded to wife may not provide her with dependable income. Here, wife came to the marriage with no substantial assets and, at the time of trial, was in essentially the same economic position. Indeed, wife's checking account contained only $300, her savings account only $50, and she did not own a motor vehicle. The property division ordered by the trial court provides wife with net assets of over $700,000, 80 percent of which comes from husband's ESOP and stock. That is a substantial gain in assets to wife, a gain that will allow her to enjoy a greater standard of living at some point. However, the record is devoid of any evidence regarding the liquidity of those assets. *See Bounds and Bounds*, 185 Or App 619, 625, 60 P3d 1090 (2003) (declining to consider husband's argument that wife has no need for spousal support given that she will receive investment income from the property award because there was no evidentiary support for that position). Any consideration of liquidity would be speculative. Because that part of wife's contribution to the marital estate may not be immediately realized, we are reluctant to reconfigure the award made by the trial court on that basis.

Under ORS 107.105(1)(d)(B)(vi), the amount of support awarded by the trial court will allow wife to close the gap between her income and expenses and will provide her with a standard of living not disproportionate to that maintained during the marriage. It is an amount that will ensure that wife can meet her needs for the next phase of her life, one that will continue the already disproportionate income of husband and wife, yet will not cause husband substantial hardship. The amount of the support is comparable to the level of support provided by husband during the separation ($1,750 per month, together with health insurance). Most importantly, that level of support will allow wife to share

appropriately in the enhanced earning capacity of husband to which she contributed. On those bases, we find that, pursuant to ORS 107.105(1)(d)(B), the compensatory spousal support award of $2,100 per month for 10 years is just and equitable in all the circumstances.

Affirmed.