246 P.3d 513 (2011)
240 Or. App. 447
In the Matter of the MARRIAGE OF Michael V. DEMING, Petitioner-Respondent, and
Debra Ann Deming, Respondent-Appellant.
07DO0673DS; A139552.
Court of Appeals of Oregon.
Argued and Submitted November 5, 2009.
Decided January 19, 2011.
*514 Mark Johnson, Portland, argued the cause for appellant. With him on the opening brief were Laura B. Rufolo and Johnson & Lechman-Su PC.
George W. Kelly, Eugene, argued the cause and filed the brief for respondent.
Before HASELTON, Presiding Judge, and ARMSTRONG, Judge, and DUNCAN, Judge.[*]
DUNCAN, J.
Wife appeals the trial court's dissolution judgment, assigning error to the court's spousal support award and property division. We reject her contentions concerning spousal support without discussion and write only to address wife's argument that, when dividing the parties' property, the trial court erred by valuing husband's retirement accounts (the "Retirement Income Plan" and the "Savings Plan") as of the date of separation, as opposed to the date of dissolution. On de novo review, ORS 19.415 (2007),[1] we modify the *515 judgment with respect to the retirement accounts and otherwise affirm.
The relevant facts are as follows. The parties were married for 28 years. At the time of the dissolution trial, wife was 56 years old, and husband was 53. The parties have two adult children: a 23-year-old daughter and a 20-year-old son.
When the parties married in 1979, wife worked as a nurse and wrote articles for a newspaper. Husband worked in the oil industry. In 1981, the parties moved to Singapore for husband's job, and wife stopped working. They later returned to the United States, and wife worked from 1984 to 1991, first as a nurse and then as an office manager. Wife's jobs allowed her to have some flexibility and availability to care for the children. In 1991, the parties moved to Oregon. They moved onto a ranch in a rural area, and wife did not seek employment off the ranch because she was responsible for caring for the ranch, the livestock, and the children, then ages 4 and 7.
In 1996, the parties moved to Saudi Arabia when husband took a job with Saudi Aramco. Husband worked on a drilling platform. His regular schedule was 14 days on and seven days off. Beginning in 2006, he worked substantial amounts of overtime, from five to 11 weeks on, with one week off. Wife did not work outside the home in Saudi Arabia.
Husband had his pay deposited into a joint checking account, and wife was responsible for paying all of the parties' bills. The parties owned three homes in Oregon, one of which they rented out to tenants.
Wife returned to the United States for a visit in February 2007. Husband joined her for three days in March 2007. During his visit, husband told wife that he wanted a divorce. He set up a separate checking account and returned to Saudi Arabia alone.
Wife purchased a condominium in southern California for the parties' son to live in while he attended college there. Although the parties' children were adults, wife assisted them. She helped the son find housing and helped the daughter with her newborn child.
After husband returned to Saudi Arabia, he arranged to have his pay deposited into his separate checking account, and he provided wife with an average of $5,000 per month. She used that money to pay the mortgage and utilities for one of the parties' Oregon homes, as well as the mortgage on the condominium, their son's living expenses, and her own personal expenses. Husband deposited the money into the parties' joint account and specified what bills wife should pay, although wife determined what expenses to cover for their son. When the tenant in the parties' rental property was late in paying rent, wife used the funds she got from husband to pay the mortgage on the rental property.
Husband filed for dissolution in May 2007. The dissolution trial was held in February 2008. The parties disagreed about how the trial court should value husband's retirement accounts. Husband argued that the court should use the value of the accounts as of the parties' separation in March 2007, asserting that he had rebutted the statutory presumption of equal contribution with respect to the post-separation increases in the value of the accounts. Wife, on the other hand, argued that the court should use the value of the accounts as of the date of either the dissolution trial or the judgment. Wife asserted that husband had not rebutted the presumption of equal contribution because the parties' separation was short and the parties were not financially independent of each other during the separation. The trial court accepted husband's argument, explaining in its letter opinion:
"For the purposes of this decision, the separation of the parties occurred in the early spring of 2007, and the balance of the [Retirement Income Plan] increased from $437,939 on March 31, 2007 * * * to $494,748 on December 31, 2007.[[2]] There is no evidence that Wife had any involvement in the investment portfolio; therefore, this increase appears to be entirely passive, and Husband has overcome the *516 presumption of equal contribution. Hence, the date of valuation is March 31, 2007[.]"[3]
The judgment provides:
"Wife is hereby assigned fifty percent (50%) of Husband's accrued benefits and account balances ('Assigned Benefits') in the [Retirement Income Plan] and the [Savings Plan] * * * as of March 31, 2007, ('Assignment Date'). The Assigned Benefits shall be adjusted for all actual earnings and losses and for other changes in value from the Assignment Date forward. Any Plan loans shall be retained in the Husband's share of such Plan and it shall be the Husband's sole responsibility to repay any such loans to the Plans. However, any Plan loans shall not be included in the value of Husband's benefits and account balances * * * for the purpose of determining the total value of Husband's Benefits.
"* * * * *
"The court shall retain jurisdiction for presentation of further evidence or to resolve any disputes which relate to any of the retirement benefits and accounts awarded under this paragraph and to enter any [Supplemental Judgment] necessary for the assignment, transfer or distribution of the retirement benefits from Husband to Wife. * * *"
On appeal, the parties renew their arguments regarding the valuation of husband's retirement accounts. We begin our analysis with the governing statute, ORS 107.105(1), which provides, in part:
"Whenever the court renders a judgment of marital annulment, dissolution or separation, the court may provide in the judgment:
"* * * * *
"(f) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. A retirement plan or pension or an interest therein shall be considered as property. The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."
Under ORS 107.105(1)(f), a court has authority to divide all of the property held by the parties at the time of dissolution, regardless of how the property is titled and regardless of when it was acquired. Pierson and Pierson, 294 Or. 117, 122, 653 P.2d 1258 (1982). Property subject to the court's disposition authority is commonly called "marital property." Massee and Massee, 328 Or. 195, 206, 970 P.2d 1203 (1999). A court must divide marital property in a manner that is "just and proper in all the circumstances." ORS 107.105(1)(f).
There are two classes of marital property: property acquired before the marriage and property acquired during the marriage. Pierson, 294 Or. at 121-22, 653 P.2d 1258. Property acquired during the marriage, called "marital assets," is subject to the presumption of equal contribution. ORS 107.105(1)(f); Pierson, 294 Or. at 121, 653 P.2d 1258.
The presumption of equal contribution "embodies a legislative intent to recognize that, absent evidence to the contrary, each spouse's efforts during a marriage equally contribute to, and are made for the benefit of, the marital estate, regardless of the nature of those efforts or how the property is held." Kunze and Kunze, 337 Or. 122, 134, 92 P.3d 100 (2004). The presumption was enacted in 1977, along with the requirement that a dissolution court consider the contribution of a homemaker spouse as a contribution to the acquisition of marital assets, also codified in ORS 107.105(1)(f). Or. Laws 1977, ch. 847, § 2. The enactment was based, in part, on the legislature's recognition that, "although money for the acquisition of property during the *517 marriage often results from the labors of the employed spouse, the efforts of the nonwage-earning homemaker are also an important contribution toward the acquisition of property during the marriage." Engle and Engle, 293 Or. 207, 214, 646 P.2d 20 (1982).
The presumption of equal contribution applies to property acquired during the time between separation and dissolution, including increases in the value of retirement accounts. Richardson and Richardson, 307 Or. 370, 377, 769 P.2d 179 (1989); Taraghi and Spanke-Taraghi, 159 Or.App. 480, 493, 977 P.2d 453 (1999).
To rebut the presumption of equal contribution, a party must prove by a preponderance of the evidence that the acquisition of the disputed marital assets did not result from an equal contribution from the other spouse. Kunze, 337 Or. at 134, 92 P.3d 100; English and English, 223 Or.App. 196, 203, 194 P.3d 887 (2008).
To rebut the presumption with respect to property acquired during the period between separation and dissolution, a party generally must make "a showing of a long period of separation and mutual financial independence before the dissolution." Thompson and Thompson, 103 Or.App. 458, 461, 797 P.2d 1077 (1990). See also Follansbee and Ackerman, 115 Or.App. 39, 45, 836 P.2d 763 (1992); Crislip and Crislip, 86 Or.App. 146, 149-50, 738 P.2d 602 (1987); Olinger and Olinger, 75 Or.App. 351, 357, 707 P.2d 64, rev. den., 300 Or. 367, 712 P.2d 109 (1985). Such a showing indicates that the spouses have separated their financial lives and are no longer performing roles they assumed based on an understanding that they would share in the results of each other's efforts.
The Supreme Court's decision in Lemke and Lemke, 289 Or. 145, 148, 611 P.2d 295 (1980), illustrates the type of separation that will rebut the presumption of equal contribution. In Lemke, the parties had been married for eight years before they separated. When they separated, they divided their property and then lived separate lives for 20 years before dissolving their marriage. Noting the parties' "extended period of mutual financial independence," the Supreme Court held that the husband had rebutted the presumption of equal contribution with respect to property he acquired during the separation. Id.; see also Thompson, 103 Or.App. at 461-62, 797 P.2d 1077 (explaining that in Richardson the presumption of equal contribution was rebutted where "the parties had been separated and had been financially independent for over seven years before the dissolution judgment").
In contrast, English, 223 Or.App. at 198-99, 194 P.3d 887, illustrates the type of separation that will not rebut the presumption of equal contribution. In English, the parties were married and lived together for 14 years and had two children before they separated. After the separation, the husband moved from Oregon to South Carolina. The parties obtained separate bank accounts and the husband took his name off of their joint credit card accounts. The parties remained joint owners of the family home, and the husband paid the mortgage as well as several of the utility bills. He also provided the wife and children with medical insurance through his work. In addition, the parties continued to file joint tax returns.
After 11 years of separation, the wife filed for dissolution. The husband argued that he should receive the retirement and stock assets he acquired after the parties separated. The trial court rejected his argument, holding that he had not rebutted the presumption of equal contribution. On appeal, we affirmed on the grounds that (1) the wife had contributed to the acquisition of the property during the separation by maintaining the family home in Oregon and raising the parties' children; (2) the parties had held themselves out as married during the separation, most notably by filing joint tax returns; and (3) there was not a separation of the parties' financial affairs, as the wife "relied on husband for substantial financial assistance during the entirety of their time apart." English, 223 Or.App. at 205, 194 P.3d 887. See also Thompson, 103 Or.App. at 462, 797 P.2d 1077 (presumption of equal contribution was not rebutted where the parties were separated for 13 months and there was no showing of mutual financial independence during that time); Follansbee, 115 Or.App. at 45, 836 *518 P.2d 763 (presumption was not rebutted where "the parties had been separated for one year, a short period, and they were not then financially independent of one another"); Crislip, 86 Or.App. at 150, 738 P.2d 602 (presumption was not rebutted where parties had been separated two and one-half years but remained "financially connected").
In the present case, the trial court erred in determining that husband had rebutted the presumption of equal contribution with respect to the increase in his retirement benefits after the parties separated. Throughout the marriage, the parties functioned as a marital unit for financial purposes. Each contributed to the marital estate; they both worked in support of the family's ability to acquire property, and there is no indication that they intended to hold acquired property separately.
Although both husband and wife worked outside the home at the beginning of the marriage, wife stopped working outside the home when the parties moved to Singapore for husband's work. She worked for a few years when they returned to the United States, but not at all after 1991. She was a homemaker; she took care of the ranch and the parties' young children. The parties moved to Saudi Arabia in 1996 and remained there for 11 years. Husband worked for extended periods of time on an oil rig, and wife was responsible for managing the parties' financial obligations, including paying the parties' bills for their multiple properties. The law presumes, and the evidence does not suggest otherwise, that husband and wife assumed their different economic roles because they intended to share in the marital estate.
The parties were separated for 11 months, a short period of time, and, even more importantly, they were not financially independent of each other during the separation. As in English, the parties lived apart and had separate bank accounts, but they still functioned as a marital unit for financial purposes. In keeping with his obligations, husband paid family expenses, and wife "relied on husband for substantial financial assistance during the entirety of their time apart." English, 223 Or.App. at 205, 194 P.3d 887.
Husband argues that he rebutted the presumption of equal contribution with respect to the increased value of his retirement accounts during separation because wife did not perform any homemaking tasks for him during their separation. We reject husband's argument for two reasons. First, during the separation, wife continued to perform tasks for the economic benefit of the parties as she did during the marriage; she remained responsible for managing the parties' bills and working with their tenant.
Second, and more importantly, the timeframe on which husband focuses is too limited. When determining whether a spouse has contributed to the acquisition of an asset acquired during a separation, we do not focus only on the activities of the spouse during the separation. Assets acquired during separation may have "roots extending far back into the marriage." Clapperton and Clapperton, 58 Or.App. 577, 580, 649 P.2d 620 (1982) (the husband did not rebut the presumption of equal contribution with respect to business interests acquired during the parties' separation where the interests grew out of opportunities he had and skills he developed during the parties' marriage). Here, wife has been a homemaker for most of the parties' 28-year marriage. She has managed the parties' households and tended to their children; she has also moved to foreign countries in support of husband's work. See, e.g., Denton and Denton, 326 Or. 236, 244, 951 P.2d 693 (1998) (wife's continuing willingness to relocate contributed to husband's earning capacity). The increases in husband's retirement accounts are earnings; they are the result of the position that wife has helped put him in and are rooted in the parties' joint efforts over the course of their marriage. Therefore, we conclude that husband has not rebutted the presumption of equal contribution with respect to the increase in the value of his retirement accounts during the parties' separation, and the trial court erred in using the value of the accounts at the time of separation.
*519 For the foregoing reasons, we modify the dissolution judgment to use the date of the dissolution judgment, June 28, 2008, as the "Assignment Date" for purposes of valuing the retirement accounts rather than March 31, 2007, the date of separation.
Judgment modified to replace the "Assignment Date" of March 31, 2007, with June 27, 2008; otherwise affirmed.
NOTES
[*] Duncan, J., vice Brewer, C. J.
[1] ORS 19.415 was amended by Senate Bill 262 (2009). Or. Laws 2009, ch. 231, §§ 2-3. The amendments apply to appeals in which the notice of appeal was filed on or after June 4, 2009. Because the notice of appeal in this case was filed before that date, the amendments do not apply.
[2] The value of the Savings Plan increased from $13,016.39 on March 31, 2007, to $16,526.92 in December 31, 2007.
[3] Husband told wife that he wanted a divorce in March 2007 and filed for dissolution in May 2007. The parties do not challenge the trial court's determination that they separated in March 2007. The dissolution trial was 11 months later, in February 2008; judgment was entered in June 2008.